In re **TEXAS ASSOCIATION OF SCHOOL BOARDS, INC.** and Texas *Association of School Boards Risk* Management Fund, Relators.

No. 03–1151.

Supreme Court of Texas.

Argued Sept. 30, 2004.

Decided May 13, 2005.

Rehearing Denied Sept. 16, 2005.

Bruce Edwin Ramage, Dale Jefferson, Levon G. Hovnatanian, Robin I. Krumme, Christopher W. Martin, Dale Jefferson, Martin Disiere Jefferson & Wisdom, L.L.P., Houston, Francisco Enriquez, Law Offices of Frank Enriquez, McAllen, TX, for Relators.

Mark C. Brodeur, Brodeur & Evans, P.L.L.C., Charles Lee Barrera, Barrera & Barrera, Alice, and Roland L. Leon, Stephen Jeffrey Chapman, Barker Leon Fancher & Matthys, LLP., Corpus Christi, TX, for Real Party.

Justice OWEN delivered the opinion of the Court.

In this mandamus proceeding, the Texas Association of School Boards, Inc. and the Texas Association of School Boards Risk Management Fund seek to have a suit against them transferred from Duval County to Travis County based on a contractual choice of venue provision in a risk coverage agreement that is similar to an insurance contract. They assert that the agreement is a "major transaction" within the meaning of section 15.020 of the Civil Practice and Remedies Code.[1] Section 15.020 is a mandatory venue provision. If there is a written agreement that suit arising from a "major transaction" may be brought in a particular county, suit must be brought in that county.[2] A "major transaction" is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million."[3] The relators agreed to provide more than $17 million in risk coverage at a cost of $41,973 per year. The trial court declined to enforce the parties' venue agreement without stating its reasons, and the court of appeals denied mandamus relief.[4] We likewise deny mandamus relief. The mandatory venue provision in section 15.020 is inapplicable

---

**1.** TEX. CIV. PRAC. & REM.CODE § 15.020.

**2.** *Id.* § 15.020(b).

**3.** *Id.* § 15.020(a).

**4.** *In re Tex. Ass'n of Sch. Bds., Inc.,* 161 S.W.3d 517 (Tex.App.-San Antonio 2003, orig. proceeding) (per curiam).

because the coverage agreement is not a "major transaction."[5]

## I

The Texas Association of School Boards Risk Management Fund (the Fund) is a nonprofit, statewide administrative agency consisting of cooperating public school districts in Texas. The Fund offers self-funded liability coverage plans to education-based political subdivisions. The Texas Association of School Boards (TASB) is the Fund's servicing contractor and provides services including the investigation and handling of property loss claims.

In October 2000, Benavides Independent School District (BISD) and the Fund entered into an "Interlocal Participation Agreement" under which the Fund agreed to provide vehicle and general liability coverage as well as coverage for certain casualty losses to property in return for an annual contribution from BISD. The term of the agreement was for one year, automatically renewable for two successive one-year terms, with the coverage and contribution amounts adjusted annually.

The coverage was renewed for the first renewal term, and during that term, coverage for potential losses or liabilities was in excess of $17,000,000 for an annual contribution of $41,973.[6] In their briefing in this Court, the parties have segregated the annual amount paid for coverage of up to $15,309,822 for casualty loss to buildings, personal property, and auxiliary structures—$33,069—from the annual amount paid for all other coverage—$8,904.

This suit arises from BISD's claim for indemnity under the parties' agreement for water damage and other alleged physical losses to every building in its school district, totaling more than $17 million. TASB denied the claim, and BISD appealed to the Fund's Board of Trustees, which affirmed the denial. BISD then sued the Fund and TASB in Duval County, asserting claims for breach of contract, declaratory relief, deceptive trade practices, unconscionable conduct, negligence, gross negligence, and breach of an alleged duty of good faith and fair dealing. BISD subsequently joined two other defendants, alleging negligence against Roofology Consultants Corp., which provided roofing consultation to BISD for some of the buildings at issue, and alleging tortious interference and civil conspiracy against Pro–Staff Adjusting Services, which investigated BISD's claims on behalf of the Fund and TASB.

The Fund and TASB filed a motion to transfer venue to Travis County based on a venue provision in the coverage agreement, which states "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Texas, and venue shall lie in Travis County, Tex-

---

5. Tex. Civ. Prac. & Rem.Code § 15.020(a).

6. The agreement provided for "$15,309,822 Blanket Replacement Cost Limit on Buildings, Personal Property and Auxiliary Structures" for a contribution of $33,069; "General Liability" including "Personal Injury and Employee Benefits Liability" with a $1,000,000 per occurrence limit for a contribution of $825; "School Professional Legal Liability" with a $1,000,000 annual aggregate limit for a contribution of $3,964; "Vehicle Coverage" "Fleet Liability" with $100,000 per person and $300,000 per occurrence limits for bodily injury and $100,000 property damage limits, for a contribution of $2,286; "Vehicle Coverage" "Physical Damage—Actual Cash Value" "Private Passenger" "Comprehensive" for a contribution of $129 and "Collision" for a contribution of $483; "Vehicle Coverage" "Physical Damage—Actual Cash Value" "All other vehicles (Buses, Trucks, Trailers and Vans)" "Specified Perils" for a contribution of $509 and "Collision" for a contribution of $708.

as, unless otherwise mandated by law." The Fund and TASB contend that venue is mandatory in Travis County pursuant to section 15.020 of the Texas Civil Practice and Remedies Code because, they assert, the agreement with BISD is a "major transaction." That term is defined in section 15.020:

"major transaction" means a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million ... [not including] a transaction entered into primarily for personal, family, or household purposes, or to settle a personal injury or wrongful death claim, without regard to the aggregate value.[7]

The Fund and TASB contend that the aggregate stated value of the consideration for the coverage agreement is BISD's annual contribution plus the coverage limits under the agreement, which would exceed section 15.020's $1 million threshold. BISD counters that the consideration is only BISD's $33,069 annual contribution for property casualty loss coverage. Alternatively, BISD asserts that (1) the choice of venue provision is unenforceable because the coverage agreement is unconscionable,[8] (2) its claim is for damage to real property and therefore venue in Duval County is mandatory under section 15.011,[9] or (3) if both sections 15.020 and 15.011 are mandatory, BISD's choice of venue must be given effect.

The trial court denied the Fund and TASB's motion to transfer venue without stating its reasons, and the court of appeals summarily denied the Fund and TASB's petition for writ of mandamus.[10] Because our conclusion that section 15.020 does not apply to the coverage agreement is dispositive of the request for mandamus relief, we do not reach the other issues raised by the parties.

## II

■ If a trial court erroneously denies enforcement of a mandatory venue provision, mandamus relief is available without the necessity of showing an inadequate appellate remedy.[11] Because trial courts have no discretion in determining the legal principles controlling their rulings or in applying the law to the facts, our focus in this case is whether the trial court failed to correctly apply section 15.020.[12]

■ Construction of section 15.020 is an issue of first impression for this Court. That section provides in its entirety:

### § 15.020. Major Transactions: Specification of Venue by Agreement

(a) In this section, "major transaction" means a transaction evidenced by a

---

7. *Id.*

8. *See id.* § 15.020(d)(1) ("[Section 15.020] does not apply to an action if: (1) the agreement described by this section was unconscionable at the time that it was made.").

9. *See id.* § 15.011 ("Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.").

10. *In re Tex. Ass'n of Sch. Bds., Inc.,* 161 S.W.3d 517 (Tex.App.-San Antonio 2003, orig. proceeding) (per curiam).

11. Tex. Civ. Prac. & Rem.Code § 15.0642 (authorizing application for a writ of mandamus to enforce mandatory venue provisions); *see also In re Mo. Pac. R.R. Co.,* 998 S.W.2d 212, 216 (Tex.1999) (inadequate appellate remedy is not a prerequisite to mandamus relief under Tex. Civ. Prac. & Rem.Code § 15.0642).

12. *See In re Mo. Pac. R.R. Co.,* 998 S.W.2d at 216.

written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million. The term does not include a transaction entered into primarily for personal, family, or household purposes, or to settle a personal injury or wrongful death claim, without regard to the aggregate value.

(b) An action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county.

(c) Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:

(1) the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

(2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the ac-

tion may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

(d) This section does not apply to an action if:

(1) the agreement described by this section was unconscionable at the time that it was made;

(2) the agreement regarding venue is voidable under Section 35.52, Business & Commerce Code; or

(3) venue is established under a statute of this state other than this title.

(e) This section does not affect venue and jurisdiction in an action arising from a transaction that is not a major transaction.[13]

The principal dispute in this case is what constitutes the "aggregate stated value" of the "consideration" "which a person pays or receives, or is obligated to pay or entitled to receive" under the parties' agreement.[14] We have examined the legislative history, and it is silent as to what the Legislature intended on this score. However, the legal concept of "consideration" is well-established, although difficult to distill into a short, concise definition that fits all formations of contracts.[15]

---

**13.** Tex. Civ. Prac. & Rem.Code § 15.020.

**14.** *Id.* § 15.020(a).

**15.** *See, e.g.,* Lord, Williston on Contracts, § 7:2, at 18–20, § 7:4, at 36–41, 47 (4th ed.1992). Sections 7:2 and 7:4 provide:

[A] third underlying basis for the enforcement of promises is the notion of a bargained-for exchange, and the meaning of consideration here is the idea that the consideration is the exchange or price requested and received by the promisor for his promise. Today, this notion represents the fundamental and generally accepted idea of

consideration, and it is in this sense that the word is used in this treatise.

\* \* \*

It is often stated that the consideration required to support a promise is a detriment incurred by the promisee or a benefit received by the promisor at his request. Both the drafters of the First Restatement and more explicitly the Second Restatement, [sic] assert that neither a benefit nor a detriment is necessary and that all that is required is a bargained-for exchange. However, the case law on the subject belies that assertion, the courts in general insisting that either a detriment incurred by the promisee or a benefit received by the prom-

What is clear is that the consideration for an agreement like the one between the Fund and BISD is an exchange of promises.[16] The Fund promised to pay any claims that were covered, up to the coverage limits, if, as, and when they occurred during the specified term. BISD promised to pay $41,973 for this coverage. Although the parties have looked only at the contribution for property damage coverage, which was $33,069, the statute contemplates that the "aggregate" stated value of the consideration a person pays or is obligated to pay is the determinant amount. The aggregate amount BISD agreed to pay under its written agreement with the Fund was $41,973. The "aggregate stated value" of BISD's promise to pay is thus easily determinable.

The dispute, however, is over the "aggregate stated value" of the Fund's promise. The Fund contends that this should be measured by the coverage limits. We disagree. The consideration the Fund furnished was its agreement to bear the risk that covered losses might occur. The value assigned in the coverage agreement to the risk the Fund assumed is the $41,973 annual contribution from BISD.

■■■ An insurance agreement, like the coverage agreement at issue in this case, is an aleatory contract; that is, a contract in which a promise is conditioned on the happening of a fortuitous event, an event of chance.[17] "The payment of the premium by the insured and the assumption of a specified risk by the insurer are the essential elements of the contract of insurance. The payment ... [of] premiums is the consideration for which the insurer agrees to assume the risk specified in the policy."[18] In an insurance arrangement,

> the insurer is not promising to compensate the insured for an actual, expensive loss in exchange for the relatively small, individual premium paid by the insured. Rather, the insurer is *assuming the risk* that death or property loss may occur in

---

isor at the request of the promisor exist before consideration will be found.
Both benefit and detriment in this context have a technical meaning. Neither the benefit to the promisor nor the detriment to the promisee need be actual; rather, it is a sufficient legal detriment to the promisee if he promises or performs any act, regardless of how slight or inconvenient, which he is not obligated to promise or perform so long as he does so at the request of the promisor and in exchange for the promise....

\* \* \*

By the same token, the term benefit means the receiving as the exchange for a promise some performance or forbearance which the promisor was not previously entitled to receive. That the promisor desired it for his own advantage and had no previous right to it is enough to show that it was beneficial.
*Id.* (citations omitted).

16. *See id.; see also* RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981) (explaining the need for a bargained-for exchange of promises or

performance). Section 71 of the Restatement provides:

> § 71 Requirement of Exchange; Types of Exchange(1) To constitute consideration, a performance or a return promise must be bargained for.
> (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.
> (3) The performance may consist of (a) an act other than a promise, or(b) a forbearance, or(c) the creation, modification, or destruction of a legal relation.
> (4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981).

17. MURRAY, MURRAY ON CONTRACTS § 98(G), at 590, § 105(C), at 663 (4th ed.2001).

18. COUCH ON INSURANCE 3D § 69:2 (1996) (citations omitted).

exchange for the premium payment. Moreover, the parties contemplate that the insured will perform his promise to pay premiums even though the condition to the duty of the insured never occurs. A life insurance contract in the amount of a million dollars must be performed though the insured is struck by lightning and dies after paying only one relatively small premium. Similarly, a homeowner who has paid fire insurance premiums for a lifetime cannot reclaim those premiums because no fire occurred. In fact, both parties hope that the condition will never occur.[19]

"It is characteristic of insurance that a number of risks are accepted, some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it."[20] The foundation of insurance is therefore risk distribution,[21] and premiums are a function of calculated risk. As a result, there is no premium due until risk attaches, and once risk has attached premiums have been earned and are non-returnable, absent a statutory or contract

provision to the contrary.[22] Similarly, if risk has never attached because an insurance policy was void ab initio, the insured is entitled to a return of all premiums paid.[23] Thus, the consideration to be valued is the undertaking of the risk that insured losses might occur.

▮ BISD agreed to pay what is in essence a premium of $41,973. That is the value the parties assigned to the risks the Fund assumed. In setting the contribution or premium amount, TASB's underwriting department considered BISD's loss ratio for the preceding three years, the territory, the protection class and the location. The aggregate stated value of the consideration for the coverage agreement is the amount of the contribution specified in the agreement for assumption of the risk of loss from the enumerated perils, not the coverage limits.

The Fund and TASB argue that this Court held in *Mid–Century Insurance Co. of Texas v. Kidd*[24] that insurance policy coverage limits are the consideration an insurer gives in exchange for premium payments. In *Kidd*, the issue was wheth-

**19.** Murray on Contracts § 105(C), at 663 (citations omitted).

**20.** 1 Couch, Cyclopedia of Insurance Law § 1.3 (2d ed.1959).

**21.** Holmes et al., Holmes's Appleman on Insurance, 2d § 1.2, at 3–4 (1996) ("At its core essence, risk is the Mother Mold of Insurance.... In a superficial way, insurance is generally understood as risk sharing through consensual arrangements which transfer and distribute risks among the consenting parties."); *see also* Keeton et al., Insurance Law §§ 1.2, 1.3 (1988) (observing that insurance is an arrangement for transferring and distributing risk).

**22.** Holmes, Holmes' Appleman on Insurance 2d § 33.8, at 611–12 (1998); *see also Rosenstock v. Wheeler*, 310 S.W.2d 350, 353 (Tex.Civ. App.-Houston 1958, writ ref'd) ("A premium

is the consideration paid by a person for insurance protection or coverage. When the policy of insurance is cancelled, he is without coverage and he is entitled to a refund of the consideration he has paid for the coverage for the period of time the coverage was not in force.").

**23.** *See Am. Nat'l Ins. Co. v. Smith*, 13 S.W.2d 720, 723 (Tex.Civ.App.-El Paso 1929, writ ref'd) (" '[P]remiums paid upon a void policy of insurance may be recovered because "the underwriter receives a premium for running the risk of indemnifying the insured, and whatever cause it may be owing to, if he does not run the risk the consideration for which the premium or money was paid into his hands fails, and therefore he ought to return it." ' " (quoting *Metro. Life Ins. Co. v. Felix*, 73 Ohio St. 46, 75 N.E. 941, 942 (Ohio 1905))).

**24.** 997 S.W.2d 265 (Tex.1999).

er an insurer was entitled to enforce a contractual provision in an uninsured/underinsured motorist (UM/UIM) policy, requiring any damages paid under that policy to be offset by the amount of any benefits paid to the insured under a personal-injury-protection (PIP) policy.[25] We held that the insurer was entitled to an offset in order to prevent recoveries in excess of actual damages.[26] In addressing an argument that allowing an offset would result in a failure of the consideration exchanged for the insured's PIP premiums, we said:

> UM/UIM and PIP coverages are complementary and indemnify insureds against different risks. UM/UIM coverage indemnifies insureds against only those damages proximately caused by the other driver's negligence. PIP coverage, by contrast, also covers damages attributable to the insured's own negligence. Also, the policy's UM/UIM and PIP limits may be aggregated to the extent needed to compensate actual damages. In sum PIP provides protection that UM/UIM does not. *This additional coverage is consideration for the PIP premiums paid.*[27]

The emphasized sentence correctly recognized that the agreement to provide PIP *coverage* of up to a certain amount for the insured was consideration for the additional amount of premium paid. The promise to indemnify an insured *if* an injury occurs is the consideration for the premiums paid.

\*   \*   \*   \*   \*   \*

We conclude that the trial court did not err in refusing to enforce the contractual choice of venue provision under section 15.020 of the Civil Practice and Remedies Code. Accordingly, the petition for writ of mandamus is denied.

Justice GREEN and Justice JOHNSON did not participate in the decision.

---

**25.** *Id.* at 267.

**26.** *Id.* at 277.

**27.** *Id.* at 275 (emphasis added and citation omitted).