COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§    No. 08-13-00192-CV

IN RE:  GROUP 1 REALTY, INC. AND
GROUP 1 AUTOMOTIVE, INC.    §    AN ORIGINAL PROCEEDING

Relators.    §    IN MANDAMUS

§

§

# **O P I N I O N**

Relators, Group 1 Realty, Inc. and Group 1 Automotive, Inc., seek a writ of mandamus

ordering the Respondent, the Honorable Sergio Enriquez, presiding judge of the 448th District

Court of El Paso County, to reverse his order denying Relators' motion to transfer venue.  For

the reasons that follow, we conditionally grant relief.

## **FACTUAL SUMMARY**

We are required to determine which of two mandatory venue provisions is controlling in

a suit arising from a purchase agreement and a related sublease.[1]  Both the purchase agreement

and the sublease stem from Group 1 Automotive's purchase of a car dealership in El Paso.  As

part of that transaction, Group 1 Automotive's affiliate, Group 1 Realty, entered into two leases

---

[1]  Chapter 15 of the Texas Civil Practice & Remedies Code authorizes mandamus relief to enforce its mandatory venue provisions.  TEX.CIV.PRAC.&REM.CODE ANN. § 15.0642 (West 2002).  A party seeking such relief is not required to prove the lack of an adequate appellate remedy, but need only show that the trial court abused its discretion by failing to transfer the case.  *In re Texas Department of Transportation*, 218 S.W.3d 74, 76 (Tex. 2007).

with the Real Parties in Interest, Shamaley West, L.P. and Shamaley Family Partners, L.P. ("Shamaley"), for the two parcels of real property on which the car dealership was located.[2] One of the leases, denominated as the "Lease Agreement," is between Relators and Shamaley Family Partners. The other lease, denominated as the "Sublease Agreement," is between Relators and Shamaley West.[3]

Both the Lease and the Sublease afford Relators the option to purchase the leased property. The terms of the purchase option are set out in "Contract[s] to Purchase and Sell Property" ("Purchase Agreements") that were attached to the Lease and the Sublease as exhibits. Both the Lease and the Sublease contain integration clauses stating that they "include[] and incorporate[] all Exhibits attached hereto." While neither the Lease nor the Sublease contains a venue selection clause, the Purchase Agreements do. Specifically, the Purchase Agreements state that "[j]urisdiction and venue shall lie solely in Harris County, Texas for all purposes in connection with [the Purchase Agreements]."

On September 10, 2012, Relators gave Shamaley notice of intent to exercise the option to purchase the leased properties. Three days later, both Relators and Shamaley fully executed the Purchase Agreements under both the Sublease and the Lease. Per the terms of the Purchase Agreements, each party then appointed an appraiser to determine the fair market value of the properties. If the two appraisals did not differ by more than 10%, the average of the two was deemed to be the fair market value. This price was then to be reduced by the cost of any improvements Relators had made to the properties. Both the Lease and the Sublease required

---

[2] Group 1 Automotive guaranteed Group 1 Realty's obligations under both leases.

[3] Shamaley West was formerly known as "Shamaley Buick-GMC, L.P." and it is so named in the Sublease. The property leased under the Sublease was subject to a base lease between Shamaley West, as lessee, and Argonaut Holdings, L.L.C., an a affiliate of General Motors, as lessor. Argonaut Holdings was named as a defendant in the lower court but was non-suited prior to any answer or appearance.

Relators to notify Shamaley and obtain its consent prior to beginning construction on improvements.

Ultimately, the parties' appraisals were within 10% of one another, resulting in an average fair market value of $4,465,000. Shortly thereafter, on September 26, 2012, Relators notified Shamaley that improvements totaling $1,279,301.37 had been made and sought to reduce the purchase price by that amount. This was the genesis of the parties' conflict.

On November 2, 2012, Shamaley notified Relators that it had not received notice of nor consented to the improvements prior to their construction, and that it considered Relators to be in violation of the Sublease.[4] Shamaley filed the underlying declaratory judgment action in El Paso County against Realtors that same day, seeking declarations that the improvements were made in breach of the Sublease, that Relators was required to remove the improvements, and that, per the terms of the Purchase Agreement, only improvements made with Shamaley's consent were deductible from the purchase price of the property.

On November 30, 2012, Relators responded to Shamaley's suit with a motion to transfer venue to Harris County. That same day, Relators also filed suit against Shamaley in Harris County seeking specific performance of the Purchase Agreement. The Harris County court abated that suit pending a ruling on Relators' motion to transfer venue in the El Paso County case. The El Paso County court subsequently denied the motion to transfer, and this original proceeding in mandamus followed.

## VENUE ANALYSIS

Relators motion is based upon the venue selection clause contained in the Purchase Agreement, which it contends is proper and enforceable under Section 15.020 of the Civil

---

[4] Improvements were made only to the property leased under the Sublease, not the Lease.

Practice and Remedies Code. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 15.020 (West Supp. 2013). Although the fixing of venue by contract is generally invalid, Section 15.020 creates a limited exception in cases involving "major transactions." *Id.*; *In re Great Lakes Dredge & Dock Co.*, 251 S.W.3d 68, 76 (Tex.App.--Corpus Christi 2008, orig. proceeding), *citing Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972). Section 15.020(a) defines "major transaction" as one that is "evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million."[5] TEX.CIV.PRAC.&REM.CODE ANN. § 15.020(a). Section 15.020 is a mandatory venue provision. *See id.*, § 15.020(c).

Shamaley contends that the Sublease, not the Purchase Agreement, controls the parties dispute, and that venue is therefore mandatory in El Paso County pursuant to Section 15.0115 of the Civil Practice and Remedies Code. Section 15.0115 mandates that a suit between a landlord and a tenant arising under a lease must be brought in the county in which the real property is located. TEX.CIV.PRAC.&REM.CODE ANN. § 15.0115. Shamaley similarly complains that a conflict between two mandatory venue provisions must be resolved by determining the nature of the relief sought and the principal right asserted. *Brown v. Gulf Television Co.*, 306 S.W.2d 706 (Tex. 1957). While the *Brown* case indeed supports such an approach, it is ultimately distinguishable. *See Brown*, 306 S.W.2d at 708.

*Brown* involved a seeming conflict between two mandatory venue statutes--one establishing venue for land disputes, and one for injunctive suits. *Brown*, 306 S.W.2d at 708. The court gave effect to both statutes, and then looked to the nature of the suit and the relief

---

[5] Neither party contests that the Purchase Agreement constitutes a major transaction under Section 15.020. As such, we need not decide the issue. TEX.R.APP.P. 38.1(i); TEX.R.APP.P. 38.2(a).

requested in order to determine which venue provision was more applicable. *Id.* at 709. Those statutes did not contain express direction about how to resolve a potential conflict.[6]

Sections 15.0115 and 15.020 are both mandatory venue provisions. However, Section 15.020 specifies that a venue selection agreement satisfying its requisites is controlling over all other venue provisions contained in Title 2 of the Civil Practice and Remedies Code.[7] TEX.CIV.PRAC.&REM.CODE ANN. § 15.020(c).[8] Conversely, Section 15.0115 expressly provides that it is subordinate to other mandatory venue provisions: "*Except as provided by another statute prescribing mandatory venue*, a suit between a landlord and a tenant arising under a lease shall be brought in the county in which all or a part of the real property is located." [Emphasis added]. TEX.CIV.PRAC.&REM.CODE ANN. § 15.0115(a). Contrary to Shamaley's arguments, there is no conflict between 15.020 and 15.0115. Section 15.020 clearly controls. *Id.*; *see also In re Royalco Oil & Gas Corp.*, 287 S.W.3d at 399, n.2.

---

[6] The venue statutes at issue in *Brown* were the predecessors of Section 15.011 of the Civil Practice and Remedies Code, mandating venue in suits involving interests in real property, and Section 65.023 of the Code, establishing mandatory venue in injunctive suits. *See Brown*, 306 S.W.2d at 708. Each statute was unconditionally mandatory, containing no provision for exception. *Id.* Likewise, neither statute contained any direction about its applicability in the face of another mandatory venue provision. *Id.*

[7] Sections 15.020 and 15.0115 are both contained in Title 2 of the Civil Practice and Remedies Code. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 15.020, 15.0115; s*ee also In re Royalco Oil & Gas Corp.*, 287 S.W.3d 398, 399, n.2 (Tex.App.--Waco 2009, orig. proceeding).

[8] Specifically, 15.020(c) provides in relevant part as follows:

> (c) *Notwithstanding any other provision of this title*, an action arising from a major transaction may not be brought in a county if:
>
> .    .    .
>
> > (2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

[Emphasis added]. TEX.CIV.PRAC.&REM.CODE ANN. § 15.020(c).

In support of its argument that the Sublease is the dominant purpose of the parties' dispute, Shamaley maintains that the trial court's determination of its requested declarations will primarily turn on an interpretation of the terms of the Sublease. However, many of Shamaley's proposed declarations clearly require an analysis of the terms of the Purchase Agreement. Most notably, Shamaley seeks declarations that Relators have not complied with the terms of the Purchase Agreement, and that the Purchase Agreement only allows the price to be reduced by the cost of improvements made with Shamaley's consent. As such, both Sections 15.020 and 15.0115 are implicated by Shamaley's suit, and Section 15.020, by its express language, controls. TEX.CIV.PRAC.&REM.CODE ANN. § 15.020(c).

Although Section 15.20's dominant language makes it unnecessary to characterize the essence of Shamaley's suit, doing so does not change the outcome. "It is the ultimate or dominant purpose of a suit that determines whether a particular suit falls under [a mandatory venue statute], and not how the cause of action is described by the parties." *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex.App.--Houston [1st Dist.] 1982, no writ), *citing Texaco v. Gideon*, 366 S.W.2d 628 (Tex.Civ.App.--Houston 1963, no writ). In arguing that this principle favors their point of view, both parties rely on the *Applied Chemical Magnesias Corp*. case. *See In re Applied Chemical Magnesias Corp*., 206 S.W.3d 114 (Tex. 2006).

*Applied Chemical* considered whether a litigant could circumvent a mandatory venue statute through artful use of a declaratory judgment action. *Id*. at 117-19. The statute at issue was Section 15.011 of the Civil Practice and Remedies Code, which mandates that suits seeking to quiet title to real property be filed in the county where the property is located. TEX.CIV.PRAC.&REM.CODE ANN. § 15.011. The Supreme Court looked to the essence of the parties' dispute and determined that the declaratory judgment action, filed in a county other than

6

where the real property was located, was merely an "indirect means of quieting title." *In re Applied Chemical Magnesias Corp.*, 206 S.W.3d at 119. Accordingly, venue was controlled by Section 15.011, despite the nature of the cause of action as described in the pleadings. *Id.*

The essence of the instant dispute is whether Relators are entitled to reduce the purchase price of the property by the cost of the improvements it made. The catalyst of the dispute was unquestionably Relators' demand for the price reduction. Indeed, Shamaley filed its declaratory judgment action just six days later. Although Shamaley's requested declarations concern both the Sublease and the Purchase Agreement, the majority of those concerning the Sublease are clearly designed to establish Shamaley's defense against the enforcement of the Purchase Agreement. For instance, Shamaley requests the court to declare: "that Group 1's failure to perform the covenants, conditions, and agreements of the [Sublease] have [sic] prevented the exercise of the Purchase Options contained in the Leases, preventing the formation of a Purchase [Agreement] relating to either parcel of the real property subject to the Leases."[9] The object of this proposed declaration, like Shamaley's suit, is the Purchase Agreement, not the Sublease. Because we have concluded that Shamaley's suit is controlled by Section 15.020's mandatory venue provision, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its order denying Relators' motion to transfer, and to transfer venue of this matter to Harris County. The writ will issue only if the trial court fails to comply.


March 12, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

---

[9] Notably, the Purchase Agreement had already been executed by both parties when Shamaley filed suit.

7