

# NUMBER 13-25-00335-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE INEOS USA OIL & GAS LLC; CNOOC ENERGY U.S.A., LLC; JAMESTOWN RESOURCES, LLC; CHESAPEAKE EXPLORATION, L.L.C.; AND CHESAPEAKE OPERATING, L.L.C.

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Justice Fonseca**

By petition for writ of mandamus, relators INEOS USA Oil & Gas LLC (INEOS); CNOOC Energy U.S.A., LLC (CNOOC); Jamestown Resources, LLC (Jamestown); Chesapeake Exploration, L.L.C. (Chesapeake Exploration); and Chesapeake Operating, L.L.C. (Chesapeake Operating) assert that the trial court[1] abused its discretion by

---

[1] This original proceeding arises from trial court cause number 2025CCV-60034-1 in the County Court at Law No. 1 of Nueces County, Texas, and the respondent is the Honorable Todd A. Robinson. *See* TEX. R. APP. P. 52.2.

refusing to transfer venue of this oil and gas dispute from Nueces County, Texas, to La Salle County, Texas. Relators assert that the venue selection clause in the parties' agreement providing for suit in Nueces County is unenforceable because the agreement does not evidence a "major transaction" and that venue in La Salle County is mandatory because that is where the real property at issue in the lawsuit is located. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.020 (governing mandatory venue in suits regarding "major transactions"), 15.011 (governing mandatory venue regarding land). We conditionally grant the petition for writ of mandamus.

## I.  BACKGROUND

The underlying lawsuit concerns the assignment of fourteen oil and gas leases covering 633.22 acres in La Salle County. To effectuate the assignment, real party in interest Texas Lone Star Petroleum Corporation (Lone Star) and Empresa Energy, LLC (Empresa)[2] entered into two contracts: a "Purchase and Sale Agreement" (PSA) and a "Partial Assignment of Oil, Gas, and Mineral Leases with Reservation of Overriding Royalty Interest and Reversionary Rights" (Assignment). The Assignment contains a venue selection clause which provides that "[v]enue for any cause of action pertaining to this Assignment or the interests assigned or reserved by this Assignment shall lie exclusively in Corpus Christi, Nueces County, Texas."[3]

In the PSA, Lone Star agreed to assign the leases to Empresa, and Empresa agreed to pay Lone Star $850.00 per acre for 633.22 acres for the total sum of $538,237

---

[2] Empresa has not answered or otherwise appeared in the underlying lawsuit or this original proceeding.

[3] The PSA contains a similar venue selection clause which provides that "[v]enue for any cause of action relating to this agreement or the documents delivered pursuant to this Agreement shall lie exclusively in Corpus Christi, Nueces County, Texas."

2

as the purchase price. In the Assignment, Lone Star transferred its interests in the leases to Empresa "for ten dollars ([$]10.00) and other good and valuable consideration." The Assignment granted Lone Star contingent reversionary rights to the leases if, for instance, Empresa failed to drill a well according to certain specifications on lease acreage, or if Empresa's wells did not satisfy certain production levels. If such an instance occurred, then Lone Star could terminate the Assignment, and Empresa was required to reassign its interests back to Lone Star.

Thereafter, Empresa assigned seven of the fourteen leases to Chesapeake Exploration, which conveyed some interests to CNOOC. Chesapeake Operating then formed two pooled units that included portions of the leases and commenced drilling. Later, Chesapeake Exploration assigned its interests in the seven leases to INEOS. INEOS began drilling wells for itself and as operator for CNOOC, and Jamestown also began drilling wells.

On January 7, 2025, Lone Star filed suit against relators and Empresa in Nueces County alleging that the case involved a "major transaction," and, thus, the venue selection clause in the Assignment provided for mandatory venue in Nueces County. *See id*. § 15.020. Lone Star alleged that some of the wells that had been drilled failed to satisfy the production levels required by the Assignment, thereby triggering Lone Star's right to take over the ownership and operation of the wells and associated proration units. Accordingly, Lone Star alleged that it possessed equitable title to the wells and acreage, and it sought, *inter alia*, specific performance of the Assignment to enforce its ownership rights.

Subsequently, relators filed separate motions to transfer venue arguing that the venue selection clause was unenforceable because the PSA and Assignment did not involve a "major transaction," and that venue was mandatory in La Salle County where the wells and proration units are located. Lone Star filed a response to the motions to transfer venue, and in support of its response and position that the lawsuit involved a major transaction, presented the amended affidavit of Jeffrey D. Cobbs, the President of Lone Star, who testified in relevant part that:

(a)     The [Assignment] was signed as part of and together with the PSA and the [Assignment] and all obligations contained in the [Assignment] are made part of the PSA. The PSA and [Assignment] were parts of a single transaction for the purchase, sale[,] and development of the Subject Leases.

(b)     The PSA required Empresa to pay [Lone Star] $538,237 cash, and to agree to perform the obligations under the [Assignment], all of which are part of the consideration paid for the PSA and the [Assignment]. The dollar amount of [the consideration] paid under the PSA was not stated in the [Assignment] because the parties did not want to publicly disclose the commercial terms of the transaction in a recorded document.

(c)     Article XVII of the [Assignment] contains an express obligation for the Assignee to drill wells to the depths covered by the [Assignment], that a reasonable and prudent operator would drill under the same or similar circumstances. This provision obligated the Assignee to drill one or more wells to the Eagle Ford formation. Chesapeake and INEOS, as assignees of Empresa, did actually drill multiple wells to the Eagle Ford formation, on the acreage covered by the [Assignment].

(d)     The Assignee's obligation to drill such wells was an important part of the "other good and valuable consideration" exchanged for the [Assignment], and if Assignee had failed to drill such a well before the leases terminate, the penalty was termination of Assignee's rights and reassignment to [Lone Star]. Based on the PSA, the value of the acreage that would be lost by the Assignee for failure to drill was at least $538,474.

4

(e) On January 22, 2010, the date of the [Assignment], the cost to drill and the value of an Eagle Ford well was far in excess of $1 million. On the first well alone, the Broken Arrow Ranch Unit C LAS 2H Well, Chesapeake's authority for expenditure was $11,311,600 . . . .

(f) In June of the year 2010, [Empresa] sold and assigned seven (7) of the Subject Leases to [Chesapeake Exploration]. Chesapeake later bought seven (7) replacement leases covering lands that had originally been part of the [Assignment]. The seven Subject Leases and the replacement leases are all covered by the [Assignment].

(g) But for the [Assignment], Chesapeake and INEOS would not have drilled the C2H Well or expended the monetary amounts they did drilling this and other wells. The expenditure of these well costs were an important part of the value agreed to under the [Assignment].

(h) The obligation to drill is stated in the [Assignment], and all parties were aware of and agreed to this consideration at the time it was signed in 2010. Its value to the parties was known and understood by both [Lone Star] and by [Empresa.]

(i) The penalty for Assignee's failure to drill an Eagle Ford well is termination of the [Assignment] and reassigning the acreage to [Lone Star]. The loss of this acreage would have the agreed value of $538,237, as agreed in the PSA. The combined value of the initial Purchase Price and the value of the lost acreage is $1,076,474.00.

(j) The parties to the [Assignment] agreed and understood that the Assignee would be required to expend the cost of drilling an Eagle Ford Shale well, at a cost in excess of $1 million, or lose the purchase price and the acreage value, for a combined value of $1,076,474.00. In either event, the Assignee is obligated to expend more than $1 million as consideration for the transaction evidenced by the [Assignment].

(k) The [Assignment] contains a paragraph that requires venue of any cause of action pertaining to the [Assignment] or any of the interests assigned or reserved in the [Assignment to] lie exclusively in Nueces County, Texas.

Relators filed a reply to Lone Star's response, and they further filed objections to Cobb's amended affidavit and a motion to exclude the amended affidavit. On April 30, 2025, the trial court held a hearing on relator's motions to transfer venue and the related evidentiary

5

matters. On May 9, 2025, the trial court signed orders denying relators' motions to transfer venue, overruling their objections to Cobb's affidavit, and denying their motion to exclude Cobb's affidavit.

This original proceeding ensued. By two issues, relators assert that: (1) Lone Star's action does not arise from a "major transaction" because its "aggregate stated value" falls below the minimum required by § 15.020; and (2) venue is mandatory in La Salle County under § 15.011 because Lone Star asserts equitable and legal title to oil and gas wells and proration units located there. *See id.* §§ 15.020, 15.011. We have requested and received a response to the petition for writ of mandamus from Lone Star and a reply thereto from relators. *See* TEX. R. APP. P. 52.4, 52.5, 52.8.

## II.    MANDAMUS

A writ of mandamus is an extraordinary remedy available only when the trial court clearly abused its discretion and the party seeking relief lacks an adequate remedy on appeal. *In re Ill. Nat'l Ins.*, 685 S.W.3d 826, 834 (Tex. 2024) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Generally, venue rulings may only be reviewed on appeal from the final judgment in the case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) (prohibiting interlocutory appeals of venue determinations); TEX. R. CIV. P. 87.6 (same). However, mandamus relief is appropriate to enforce mandatory venue provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter."); *Wagner v. Apache Corp.*, 627

6

S.W.3d 277, 288 (Tex. 2021) (stating that "interlocutory review of a trial court's failure to enforce a mandatory venue provision is available only through a writ of mandamus").

### III. VENUE

The plaintiff makes the initial choice of venue. *Fortenberry v. Great Divide Ins.*, 664 S.W.3d 807, 811 (Tex. 2023); *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 762 (Tex. 2020) (orig. proceeding). A defendant may challenge a plaintiff's chosen venue by filing a motion to transfer. TEX. R. CIV. P. 86–87; TEX. CIV. PRAC. & REM. CODE ANN. § 15.063. If a defendant challenges the plaintiff's venue choice by filing a timely motion to transfer venue, the plaintiff then bears the burden to present prima facie proof that venue is maintainable in the county of suit, while the defendant bears the burden to prove venue is maintainable in the county to which the transfer is sought. *Fortenberry*, 664 S.W.3d at 811; *In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732, 738 (Tex. App.—Austin [15th Dist.] 2025, orig. proceeding); *In re Rino-K&K Compression, Inc.*, 656 S.W.3d 153, 158 (Tex. App.—Eastland 2022, orig. proceeding); *see generally* TEX. R. CIV. P. 87.2(a), 87.3(a).

### IV. LONE STAR'S VENUE CHOICE: § 15.020

In their first issue, relators assert that the venue-selection clause in the Assignment is not enforceable because the aggregate stated value of the transaction at issue is below the million-dollar requirement contained in the "major transaction" venue provision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020. In support of their contention, they contend that the PSA reflects a payment of $538,237, and the Assignment reflects a payment of "ten dollars (10.00) and other good and valuable consideration." Lone Star argues, in contrast, that the PSA and Assignment comprise a major transaction because, in addition

7

to these sums, the Assignment required the assignees to either drill a well at a cost of more than $1 million or reassign the property at issue to Lone Star with a stipulated value of $538,237.

## A.    Applicable Law

Venue selection clauses are generally unenforceable unless the contract constitutes a "major transaction" under § 15.020 of the Civil Practice and Remedies Code. *In re Grp. 1 Realty, Inc.*, 441 S.W.3d 469, 472 (Tex. App.—El Paso 2014, orig. proceeding); *Hiles v. Arnie & Co.*, 402 S.W.3d 820, 828 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also NGL Water Sols. Permian, LLC v. Lime Rock Res. V-A, L.P.*, No. 25-BC11B-0005, 2025 Tex. Bus. 20, at ¶ 18, 2025 WL 1445867, at *4 (Tex. Bus. Ct. May 20, 2025, no pet.) (mem. op. & order). Section 15.020 provides:

(a)    In this section, "major transaction" means a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million. The term does not include a transaction entered into primarily for personal, family, or household purposes, or to settle a personal injury or wrongful death claim, without regard to the aggregate value.

(b)    An action arising from a major transaction shall be brought in a county if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county.

(c)    Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:

(1)    the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

(2)    the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action

8

may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

(d)     This section does not apply to an action if:

(1)     the agreement described by this section was unconscionable at the time that it was made;

(2)     the agreement regarding venue is voidable under Chapter 272, Business & Commerce Code; or

(3)     venue is established under a statute of this state other than this title.

(e)     This section does not affect venue and jurisdiction in an action arising from a transaction that is not a major transaction.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.020;[4] *In re Grp. 1 Realty, Inc.*, 441 S.W.3d at 472; *see generally Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 358 (Tex. App.—Dallas 2009, pet. denied) (concluding that an agreement for credit card processing that specified the annual credit card volume to be $5,000,000 evidenced a major transaction); *In re Royalco Oil & Gas Corp.*, 287 S.W.3d 398, 400–01 (Tex. App.—Waco 2009, orig. proceeding) (concluding that a lease with a 99-year term requiring monthly rental payments of $20,000 constituted a major transaction). Further, § 15.020 controls and takes precedence over other mandatory venue provisions found in the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(c); *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014) (orig. proceeding).

In determining whether the claims asserted "arise from" a major transaction, we apply a "commonsense" examination of the substance of the claims. *In re Fisher*, 433

---

[4] Although not relevant to our analysis here, the Legislature amended this section, effective September 1, 2025, to provide that subsection (d)(2) will use the term "void" rather than "voidable." *See* Act of June 20, 2025, 89th Leg., R.S., ch. 427, §§ 3, 4, 2025 Tex. Sess. Law Serv. (H.B. 2960).

S.W.3d at 529; *see also In re EOG Res., Inc.*, No. 12-18-00054-CV, 2018 WL 3197612, at *2 (Tex. App.—Tyler June 29, 2018, orig. proceeding) (mem. op.). In determining the aggregate stated value of the consideration in the transaction, we may consider separate instruments. *See Rieder v. Woods*, 603 S.W.3d 86, 94–95 (Tex. 2020) (summarizing the law regarding the analysis of instruments pertaining to the same transaction); *SM Energy Co. v. Union Pac. R.R.*, 652 S.W.3d 830, 840 (Tex. App.—Eastland 2022, pet. denied) (considering a lease and wire transfer together to determine that the claim met the aggregate stated value required by § 15.020); *Hughes v. Pearcy*, No. 03-10-00319-CV, 2014 WL 7014353, at *2 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op) (concluding that a claim evidenced by four written agreements, construed together, did not meet the aggregate stated value required by § 15.020).

The Texas Supreme Court has addressed how to determine the "aggregate stated value" of the consideration in an agreement for purposes of § 15.020. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 657–60 (Tex. 2005) (orig. proceeding). In that case, the supreme court considered a venue selection provision in an agreement wherein the relators agreed to provide more than $17 million in risk coverage for a cost of $41,973. *Id.* at 654. The parties disagreed regarding whether the aggregated stated value of the consideration was determined by using the risk coverage amount, $17 million, or the amount paid for the coverage, $41,973. *Id.* at 657. In deciding this issue, the supreme court considered that the risk coverage agreement was an aleatory contract, that is, "a contract in which a promise is conditioned on the happening of a fortuitous event, [or] an event of chance." *Id.* at 658. The court explained that insurance premiums are a function of calculated risk, and once risk has attached the premiums have been earned and are

10

generally non-returnable. *Id.* at 659. Reasoning that "the consideration to be valued is the undertaking of the risk that insured losses might occur," the supreme court concluded that "[t]he aggregate stated value of the consideration for the coverage agreement is the amount of the contribution specified in the agreement for assumption of the risk of loss from the enumerated perils, not the coverage limits." *Id.* at 659. The supreme court thus determined that the trial court did not abuse its discretion by refusing to enforce the contractual venue selection provision in the risk coverage agreement under § 15.020. *Id.*

## B.    Analysis

Relators assert that this case does not involve a major transaction because the value of the consideration stated in the PSA and Assignment combined is less than $1 million. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a). In contrast, Lone Star explains that:

> Under the [Assignment], the Assignee had two choices: (a) drill an Eagle Ford Shale well as required in Article XVII of the [Assignment] at a cost in excess of $1 million; or (b) suffer the penalty for failure to drill under Article V. Paragraph A of the [Assignment], which, combined with the original purchase price set forth in the PSA, had a value of $1,076,474. In either event, the Assignee would be obligated to expend a stated value in excess of $1 million.
>
> This Court must consider the value of the drilling commitment in the [Assignment] together with the purchase price stated in the PSA. Such a review unavoidably leads to the conclusion that the transaction underlying: (a) the purchase price in the PSA; (b) the obligation to drill under the [Assignment]; and (c) the value of the penalty for failure to drill, clearly constitutes a single "major transaction" as provided in § 15.020. Under any scenario, the value of consideration for this transaction exceeds the $1 million threshold under § 15.020(a), and thus the venue selection clause would be applicable under § 15.020(b).

(Record citations omitted). Lone Star thus alleges that we must extrapolate the amount of the consideration at issue based on the ramifications of the agreement, and it further

11

asserts that the trial court was entitled to consider Cobb's amended affidavit as extrinsic evidence in support of its valuation.

As stated previously, § 15.020 defines a "major transaction" subject to mandatory venue in the county specified by agreement as "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* § 15.020(a). We determine the proper construction of this statute "using well-established statutory-construction principles and a plain-language approach. *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d at 763.

Based on the plain terms of the statute, the value of the consideration must be specifically "stated" in the agreement. *See id.*; *see also In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, orig. proceeding) (mem. op.) ("Under [§] 15.020(a), the parties' agreement must contain the aggregate stated value of the consideration. Because the Settlement and Release Agreement does not contain this information, it fails to qualify as a 'major' transaction under [§] 15.020."). Further, we do not consider contingent or prospective amounts in determining the aggregate stated value of the consideration. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d at 658–59; *see also NGL Water Sols. Permian, LLC*, 2025 Tex. Bus. 20, at ¶ 19, 2025 WL 1445867, at *4 (concluding that an agreement did not evidence a major transaction where it "state[d] no value" and "any potential consideration was conditioned on several events that never occurred); *Devon Energy Corp. v. Iona Energy, L.P.*, No. 02-19-00343-CV, 2020 WL 98138, at *4 (Tex. App.—Fort Worth Jan. 9, 2020, pet. denied) (mem. op.) (concluding that § 15.020 requires the aggregate value to be

12

stated on the face of the agreement and that the aggregate value is not determined prospectively); *Hughes*, 2014 WL 7014353, at *3 (concluding that agreements providing for payments contingent upon future sales and a future election to purchase did not support venue under § 15.020).

Despite the foregoing, Lone Star argues that the relators' "simplistic attempt to limit § 15.020 to the dollar amount shown on the face of one of the agreements is at odds with the case law applying § 15.020." In support of its contention, Lone Star cites *In re Group 1 Realty, Inc.*, 441 S.W.3d 469, and *In re Royalco Oil & Gas Corp.*, 287 S.W.3d 398. Lone Star asserts that in *Group 1*, the purchase price for certain option agreements was not stated in the agreement but was later determined by appraisal, yet "the court held that the transaction in that case was governed by § 15.020, even though the dollar value was not expressly 'stated' in the agreement." We disagree with Lone Star's characterization of *Group 1*. In *Group 1*, the parties disagreed regarding which of two mandatory venue statutes applied to the parties' dispute, and the court held that § 15.020 "clearly controls." *In re Grp. 1 Realty, Inc.*, 441 S.W.3d at 473. In so ruling, the court noted that "[n]either party contests that the [agreement] constitutes a major transaction under [§] 15.020," and "[a]s such, we need not decide the issue." *Id.* at 474 n.5.

Lone Star similarly asserts that *In re Royalco* supports its contention that the value of the consideration need not be stated in the agreement to support mandatory venue under § 15.020. *See generally In re Royalco Oil & Gas Corp.*, 287 S.W.3d 398. There, the court considered whether a saltwater disposal lease agreement constituted a major transaction. *Id.* at 399. That court considered that the lease had a 99-year fixed term and required monthly rental payments of $20,000, so "the lease would require the payment of

13

$1 million in rentals in less than five years." *Id.* at 400. The court thus concluded that "the lease constitutes a 'major transaction' for purposes of [§] 15.020 because it provides for the payment of 'consideration with an aggregate stated value' of more than $1 million." *Id.* at 400–01. Lonestar concedes; however, that "[t]he court did the math" in reaching its conclusion.

Here the PSA and Assignment do not provide for consideration with "an aggregate stated value equal to or greater than $1 million," and we cannot consider an uncertain, prospective cost (or loss) as part of consideration for the agreement. Accordingly, § 15.020 does not apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a), (b); *In re Tex. Ass'n of Sch. Boards, Inc.*, 169 S.W.3d at 658–59; *see also NGL Water Sols. Permian, LLC*, 2025 Tex. Bus. 20, ¶ 19, 2025 WL 1445867, at *4; *Devon Energy Corp.*, 2020 WL 98138, at *4; *Hughes*, 2014 WL 7014353, at *3; *In re Togs Energy, Inc.*, 2009 WL 3260910, at *1. We reject Lone Star's contentions otherwise.

## C.    Summary

We conclude that Lone Star failed to meet its burden to show that its lawsuit was based on a major transaction rendering venue mandatory in Nueces County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020. Accordingly, we sustain relators' first issue.

### V.    RELATORS' VENUE CHOICE: § 15.011

In their second issue, relators contend that venue should be transferred to La Salle County based on mandatory venue pertaining to land because Lone Star asserts equitable and legal title to oil and gas wells and proration units located there. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Lone Star asserts that § 15.020 regarding major transactions takes precedence over § 15.011, *see* TEX. CIV. PRAC. & REM. CODE ANN.

14

§ 15.020(c); *In re Fisher*, 433 S.W.3d at 534, but does not otherwise contend that § 15.011 is inapplicable. We have determined that § 15.020 does not supply mandatory venue, so we proceed to determine if relators have met their burden to prove venue should be transferred to La Salle County. *See Fortenberry*, 664 S.W.3d at 811; *In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d at 738.

Texas Civil Practice and Remedies Code § 15.011, entitled "Land," provides that:

Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011; *see In re Custom Home Builders of Cent. Tex. Inc.,* 647 S.W.3d 419, 422 (Tex. App.—San Antonio 2021, orig. proceeding). Two facts must be established to show mandatory venue based on this provision: (1) the nature of the suit fits within those listed in § 15.011; and (2) all or part of the realty at issue is in the county. *See In re Harding*, 563 S.W.3d 366, 370–71 (Tex. App.—Texarkana 2018, orig. proceeding); *Sustainable Tex. Oyster Res. Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 107 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). It is undisputed that the property at issue in this original proceeding is in La Salle County.

We examine the "essence" or "substance" of a dispute to determine whether it falls within § 15.011. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding) ("essence"); *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001) ("substance"). We determine the essence or substance of a suit by examining "the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought." *In re Signorelli Co.*, 446 S.W.3d 470, 474 (Tex. App.—Houston [1st Dist.] 2014, orig.

15

proceeding). "[O]nce it is demonstrated that the court's judgment would have some effect on an interest in real property, the venue of the suit is properly fixed under [§] 15.011." *In re Hardwick*, 426 S.W.3d 151, 161 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). If § 15.011 applies to one of Lone Star's claims or causes of action, then all "claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences" must be brought in the county of mandatory venue. TEX. CIV. PRAC. & REM. CODE ANN. § 15.004; *see In re Signorelli Co.*, 446 S.W.3d at 474; *In re Hardwick*, 426 S.W.3d at 161.

In its original petition, Lone Star asserted that it was filing suit against relators for causes of action concerning the Assignment. Lone Star stated that, under the Assignment, it had "a preferential right to take over ownership and operation of all wells in the event certain conditions occur." Lone Star explained that the Assignment required the assignee to produce two barrels of oil per day per well; that relators breached the Assignment by failing to meet this requirement; and that relators' failure triggered Lone Star's "take-over right." Among other forms of relief sought, Lone Star requested the trial court to award it "ownership and operation of the C-2H Well together with the oil and gas leases covering the proration unit of 440 acres" and "ownership and operation of the D-5H Well together with the oil and gas leases covering the proration unit of 480 acres." In the alternative, Lone Star requested the trial court to impose constructive trusts on relators' interests in these properties.

Based on the foregoing, we conclude that Lone Star's lawsuit constitutes an action for the recovery of an interest in real property under § 15.011. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011; *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d at 119

16

(concluding that a suit seeking declaratory relief determining the rights of the parties to a contract regarding the acquisition of surface and mineral leases was subject to § 15.011); *In re Freestone Underground Storage, Inc.*, 429 S.W.3d 110, 116 (Tex. App.—Texarkana 2014, orig. proceeding) (considering that "the termination of a mineral lease results in the transfer of the fee simple of the mineral estate" and thus § 15.011 provided for mandatory venue); *In re Evolution Petroleum Co*., 359 S.W.3d 710, 713–14 (Tex. App.—San Antonio 2011, orig. proceeding) (concluding that § 15.011 applied to a lawsuit wherein mineral interest owners alleged that an oil and gas company breached its lease agreement with them by failing to produce a sufficient quantity of minerals and the mineral interests had "reverted back" to them); *In re Kerr*, 293 S.W.3d 353, 358 (Tex. App.—Beaumont 2009, orig. proceeding [mand. denied]) (per curiam) (stating that "a demand for a constructive trust on an interest in land is considered tantamount to an attempt to recover the property" for purposes of § 15.011).

Relators have met their burden to show that venue is mandatory in La Salle County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Accordingly, we sustain relators' second issue.

## VI.    CONCLUSION

The Court, having examined and fully considered relators' petition for writ of mandamus, Lone Star's response, relators' reply, and the applicable law, is of the opinion that relators have met their burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to: (1) vacate its May 9, 2025 order denying relators' motions to transfer venue; and (2) issue an order granting their motions.

Our writ will issue only if the trial court fails to timely act in accordance with this memorandum opinion.

YSMAEL D. FONSECA<br>Justice

Delivered and filed on the
1st day of August, 2025.