SPIN DOCTOR GOLF, INC., Appellant,

v.

PAYMENTECH, L.P., Appellee.

No. 05–08–00458–CV.

Court of Appeals of Texas, Dallas.

Sept. 18, 2009.

Robert W. Bucholz, Robert W. Buchholz Attorney at Law, Dallas, TX, for Appellant.

E. Leon Carter, The Carter Law Firm, Jamil N. Alibhai, Laura A. Russell, Munck Carter, P.C., Dallas, TX, for Appellee.

Before Justices WRIGHT, MOSELEY, and FRANCIS.

## OPINION ON MOTION
## FOR REHEARING

Opinion By Justice WRIGHT.

We deny Spin Doctor's motion for rehearing. We withdraw our opinion of August 3, 2009, and vacate our judgment of that date. This is now the opinion of the Court.

Spin Doctor Golf, Inc. (Spin Doctor) appeals from a summary judgment. In five issues, Spin Doctor contends: (1) the Harris County trial court erred in transferring the case to Dallas County; (2) the trial court erred in granting PTI General Partner, L.L.C.'s. (PTI) no-evidence motion for summary judgment; (3) the trial court erred in granting Paymentech's motion to strike Spin Doctor's expert witnesses as untimely designated; (4) the trial court erred in granting Paymentech's motion to exclude the expert testimony of Spin Doctor's president; and (5) the trial court erred in granting Paymentech's motion for summary judgment. We sustain Spin Doctor's fifth issue, in part, and remand the breach of contract claim to the trial court. In all other respects, we affirm the trial court's judgment.

### Background

Spin Doctor manufactures and sells a specialty golf club known as the Spin Doctor Wedge. Paymentech is a credit card processing company. Jeff Hartman, an

employee of Paymentech, contacted Spin Doctor about handling its credit card processing needs. Hartman offered a zero reserve for processing Spin Doctor's credit card sales at a lower rate than its current processor. Finding the offer agreeable, Marc Davenport, Spin Doctor's sole managing partner, entered into an agreement with Paymentech in March of 2001.

Soon after Paymentech began processing Spin Doctor's credit card sales, a $7,000.00 reserve was placed on the account. Hartman assured Davenport that he was working to get the reserve released.

Spin Doctor began a major advertising campaign and its sales increased substantially. Spin Doctor noticed that Paymentech had stopped depositing funds earned from the credit card sales into its account. Spin Doctor learned that Paymentech was imposing a $940,000.00 reserve citing an extensive contingent risk exposure, high customer dissatisfaction, and delayed shipping. As a result of the large reserve imposed by Paymentech, Spin Doctor no longer had the money to pay television marketing and advertising charges, and Spin Doctor's sales decreased significantly. All but approximately $14,000.00 of the withheld funds were eventually returned to Spin Doctor.

Spin Doctor filed suit on April 20, 2005 in Harris County. Paymentech and PTI moved to transfer venue. By order dated January 20, 2006, the Harris County trial court granted the motion and transferred the case to Dallas County.

The trial court granted PTI's no-evidence motion for summary judgment and signed an order of nonsuit as to Hartman. Spin Doctor asserted causes of action against Paymentech for breach of contract, fraud, fraudulent inducement, negligent misrepresentation, unjust enrichment, conversion, and forgery. Paymentech moved for summary judgment on all claims and the trial court granted it. This appeal timely followed.

## Venue

In its first issue, Spin Doctor contends the Harris County trial court erred in transferring this case to Dallas County. In reviewing a venue decision, the appellate court must conduct an independent review of the entire record, including the trial on the merits if applicable, to determine whether any probative evidence supports the trial court's venue decision. TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 2002); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex.1994). If there is any probative evidence in the entire record that venue was proper, we must uphold the trial court's ruling. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995).

The plaintiff, by filing a lawsuit, is given the first choice regarding venue. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). A defendant raises the question of proper venue by objecting to a plaintiff's venue choice through a motion to transfer venue. TEX.R. CIV. P. 86. One ground for a motion to transfer is that mandatory venue lies in a different county. TEX.R. CIV. P. 86(3)(b). A party must establish mandatory venue by prima facie proof. TEX.R. CIV. P. 87(3)(c). If a plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion. *Wichita County v. Hart*, 917 S.W.2d 779, 781 (Tex.1996).

Under the general rule for venue, a lawsuit may be brought in the county of a defendant's residence. TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(2) (Vernon 2002). However, where parties to a major

transaction specify in their written agreement that lawsuits are to brought in a certain county, that county constitutes a mandatory venue. TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b) (Vernon Supp. 2008). A major transaction is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." TEX. CIV. PRAC. & REM.CODE ANN. § 15.020(a) (Vernon Supp. 2008).

Spin Doctor filed its lawsuit in Harris County. In its second amended original petition, Spin Doctor stated that it entered into a contract with Paymentech for credit card processing of its credit card sales of its golf clubs. It also alleged that defendant Hartman was a resident of Harris County. Thus, Harris County was a county of proper venue. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(2) (Vernon 2002).

Paymentech and PTI filed a motion to transfer venue. In their motion to transfer venue, they asserted three grounds for the transfer: (1) the agreement contained a forum selection clause specifying Dallas County as the site for any lawsuit; (2) the parties are bound by the major transaction mandatory venue exception; and (3) Spin Doctor failed to allege facts to support venue in Harris County. They attached a copy of the Merchant Credit Card Services Agreement. The agreement lists Spin Doctor's annual credit card volume at $5,000,000.00 and designates Dallas County as the forum for any lawsuit between the parties.

Spin Doctor filed a response to the motion asserting that the attached agreement was a forgery. It pointed out several flaws and misspellings in the agreement. It also asserted in its response that the "alleged contract that Defendant relies upon does not constitute a 'major transaction' as required by Civil Practice and Remedies Code Section 15.020(a)." Spin Doctor attached the affidavits of Davenport and David Ballard, one of its former officers and owners. They deny filling out the handwritten information in the agreement and contend that it is a forgery. Neither Davenport nor Ballard deny that Spin Doctor's annual sales were $5,000,000.00.

In its motion for rehearing, Spin Doctor contends we erred in holding that the agreement attached to the motion to transfer venue involves a major transaction because the $5,000,000.00 in annual sales does not constitute consideration within the meaning of section 15.020(a). Spin Doctor contends that our holding conflicts with a supreme court case. *See In re Tex. Ass'n of School Boards, Inc.,* 169 S.W.3d 653 (Tex.2005). In that case, several school boards sought transfer of venue based on a contractual choice of venue provision contained in an insurance agreement. *Id.* at 654. The supreme court addressed whether the insurance agreement constituted a major transaction within the meaning of section 15.020. The consideration paid by the school boards were the insurance premiums that were well under $1,000,000.00. The dispute centered on the "aggregate stated value" of the insurer's promise. The school boards argued that the coverage limits, which were in excess of $1,000,000.00, was the value of the insurer's promise. The supreme court held, however, that the aggregate stated value of the consideration for the parties' agreement was the amount of the premiums paid for the insurer's assumption of the risk, not the coverage limits. *Id.* at 659. The insurer assumed the risk that property loss may occur in exchange for the premium payments. *Id.* at 658–59.

The insurer in *Tex. Ass'n of School Boards* may never have to pay any money under the agreement. Paymentech, by contrast, was obligated to pay funds to Spin Doctor as it received data from Spin Doctor's credit card sales. Paymentech did not assume a risk under the parties' agreement. Rather, it assumed an obligation to pay Spin Doctor the amount of Spin Doctor's credit card sales. At the venue hearing, the written agreement stated that those sales totaled $5,000,000.00 and Spin Doctor did not dispute that amount. For these reasons, we hold that the holding in *Tex. Ass'n of School Boards* is not applicable to this case. Paymentech's obligations under the agreement are consistent with section 15.020(a)'s requirement for a major transaction. Paymentech had an obligation to Spin Doctor to send payments with an aggregate stated value equal to or greater than $1,000,000.00. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a) (Vernon Supp. 2008).

The Harris County trial court conducted a hearing on the motion to transfer venue.[1] The agreement attached to the motion to transfer venue lists annual sales of over $1,000,000.00. Thus, on its face, it constitutes prima facie evidence of a major transaction within the meaning of section 15.020(a). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.020(a) (Vernon Supp. 2008). Importantly, Spin Doctor did not deny the existence of a written agreement. Rather, it asserted only that the one attached to the motion to transfer venue was a forgery. Further, Spin Doctor did not deny the $5,000,000.00 in annual sales listed on

the agreement. Because Spin Doctor did not deny the existence of a written agreement or the amount of its annual sales as listed on the agreement attached to the motion to transfer venue, it was not necessary for the trial court in making its venue ruling or this Court in now considering that ruling to reach the merits of Spin Doctor's forgery allegation. The agreement, on its face, supports transfer pursuant to the major transaction venue provision and Spin Doctor did not deny the terms constituting a major transaction. Accordingly, we conclude the Harris County trial court properly transferred this case to Dallas County pursuant to the major transaction mandatory venue provision. *See* TEX.R. CIV. P. 87(3)(c). We overrule Spin Doctor's first issue.

### Exclusion of Davenport as an Expert Witness

■ In its fourth issue, Spin Doctor contends the trial court erred in excluding Davenport as an expert witness and his report. We review a trial court's exclusion of expert testimony for abuse of discretion. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000). A trial court abuses its discretion when its ruling is arbitrary, unreasonable or without reference to any guiding rules or legal principles. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998).

■■ To admit expert testimony, rule 702 requires (1) the witness be qualified by knowledge, skill, experience, training, or education, (2) the proposed testimony be scientific, technical, or other specialized knowledge, and (3) the testimony assist the

---

1. The venue hearing was not recorded. Normally, when a party fails to provide a reporter's record from the hearing we presume the evidence presented at the hearing supports the trial court's ruling. *See Kay v. North Tex. Rod & Custom*, 109 S.W.3d 924, 926 (Tex. App.-Dallas 2003, no pet.). In this case, however, both sides agree that no evidence was introduced at the venue hearing. Accordingly, a reporter's record is not necessary for our review. *See* TEX R.APP. P. 34.1; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex.2005).

trier of fact to understand the evidence or to determine a fact in issue. TEX.R. EVID. 702; *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). To constitute scientific knowledge that will assist the trier of fact, the proposed testimony must be both relevant and reliable. *Id.* The trial court's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id.* Evidence that is either irrelevant or unreliable is inadmissible. *Id.*

■ In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001) (quoting *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998)). General experience in a specialized field does not qualify a witness as an expert. *Gammill,* 972 S.W.2d at 719.

Paymentech moved to exclude Davenport as an expert witness and his report related to lost profit damages. In response, Spin Doctor submitted Davenport's affidavit, totaling seventy-four pages. In his affidavit, Davenport states that his opinions "were rooted in the methodology and common sense that anyone who has ever seen 'As Seen on TV' label on a product or display header at a retail store knows." He states that his expertise is based on experience. He states that he also relied upon a media financier expert and an expert in the golf retail market in formulating his opinions. Davenport also

relies upon his thirty years' experience in evaluating business opportunities and executing marketing plans for businesses. As further qualification, Davenport says that for eight years he has monitored business results for golf club manufacturers through on-line reports, trade publications, and SEC filings. Davenport admitted in his deposition that he had not done any other lost profit analyses.

The type of education and experience pertinent to lost profits testimony relates to accounting and finance. This Court has held that a certified public accountant who performed hundreds of lost profits evaluations within a sixteen-year career was qualified as an expert. *See Bright v. Addison,* 171 S.W.3d 588, 601 (Tex.App.-Dallas 2005, pet. denied). The expert witness in *Bright* used analyses generally accepted in the accounting field, regardless of the industry. *Id.* In another case, the plaintiff company's vice president of finance testified as to lost profits. *See Toshiba Machine Co., America v. SPM Flow Control, Inc.,* 180 S.W.3d 761 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated w.r.m.).[2] He had an accounting degree and over thirty years' work experience managing the accounting and financial business of companies. *Id.* at 778. The court of appeals held the trial court did not abuse its discretion in finding the witness qualified as an expert on lost profits. *Id.*

We hold that Davenport's experience in evaluating business opportunities, executing marketing plans for businesses, and monitoring business results for golf club manufacturers, no matter how extensive, does not amount to knowledge, skill, experience, training, or education so as to qual-

**2.** In accordance with TEX.R.APP P. 56.3 the supreme court vacated the court of appeals judgment without regard to the merits and remanded for implementation of a settlement agreement. This disposition did not vacate or

disapprove of the court of appeals's opinion. *Houston Cable TV, Inc. v. Inwood West Civic Ass'n,* 860 S.W.2d 72, 73 (Tex.1993); TEX. R.APP. P. 56.3.

ify him as an expert on the issue of lost profits. Moreover, detailed knowledge of the golf club manufacturing industry is not relevant to a lost profits analysis. The type of industry is not relevant to the accounting principles employed in conducting a lost profits analysis.

We conclude the trial court did not abuse its discretion in excluding Davenport as an expert witness. We overrule Spin Doctor's fourth issue.

### Summary Judgments

In its second issue, Spin Doctor contends the trial court erred in granting PTI's no-evidence motion for summary judgment. Spin Doctor contends in its fifth issue that the trial court erred in granting Paymentech's motion for summary judgment.

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

In a no-evidence motion for summary judgment, the non-movant has the burden of presenting evidence that raises a genuine issue of material fact on the challenged elements. Tex.R. Civ. P. 166a(i). We re-

view a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). Our inquiry focuses on whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *Id.* at 751; *Preston Gate, L.P. v. Bukaty*, 248 S.W.3d 892, 896 (Tex.App.-Dallas 2008, no pet.).

### 1. PTI

██ PTI filed a no-evidence motion for summary judgment. In response to PTI's no-evidence motion for summary judgment, Spin Doctor argued that PTI was liable solely due to its status as Paymentech's general partner. However, at the time of the summary judgment hearing, Spin Doctor had not sued PTI in its capacity as Paymentech's general partner. Subsequent to the hearing, but without leave of court, Spin Doctor filed its first supplemental petition alleging for the first time that PTI was liable in its capacity as Paymentech's general partner.

The trial court determines a motion for summary judgment based on the "pleadings on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." Tex.R. Civ. P. 166a(c). Spin Doctor did not seek leave from the trial court to file its supplemental petition. Thus, the petition on file at the time of the hearing supports the trial court's order granting PTI's no-evidence motion for summary judgment. Accordingly, we overrule Spin Doctor's second issue.

### 2. Paymentech

██ Paymentech asserted three grounds for its motion for summary judgment: (1) all claims are barred by the applicable statute of limitations; (2) the tort claims are barred by the "economic

loss" rule; and (3) forgery is not an independent tort. On appeal, Spin Doctor challenges only the ground that its breach of contract claim is barred by limitations. It has not challenged the other two grounds relating to its tort and forgery claims. When an appellant fails to brief one of the grounds for summary judgment, any error is waived as to the granting of that ground for summary judgment. *Smith v. Tilton,* 3 S.W.3d 77, 83, 87 (Tex. App.-Dallas 1999, no pet.). Accordingly, Spin Doctor has waived review of summary judgment on its tort and forgery claims.

A four-year statute of limitations applies to contract actions. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). A breach of contract claim accrues at the time of breach. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex.2002). When recovery is sought on an obligation payable in installments, the statute of limitations runs against each installment from the time it becomes due. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). Thus, a suit for the breach of a contract requiring payment in periodic installments may include all payments due within the four-year statute of limitations period, even if the initial breach was beyond the limitations period. Recovery of any payment more than four years overdue is barred. *Hollander v. Capon,* 853 S.W.2d 723, 726–27 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

Spin Doctor filed its lawsuit on April 20, 2005. Davenport testified that he became aware on April 13, 2001 that Paymentech placed the initial $7,000.00 reserve on its account. Paymentech sought summary judgment on the ground that Spin Doctor's suit was barred because it was filed more than four years after the initial reserve had been placed on the account. Spin

Doctor contends that its breach of contract claim is not barred because the parties' agreement constitutes a continuing contract. Paymentech contends that the continuing contract exception does not apply because only an installment contract with fixed periodic payments constitutes a continuing contract.

The continuing contract exception has been applied beyond the context of installment contracts. For example, it has been applied to an agreement for the payment of commissions. *See Davis Apparel v. Gale–Sobel, a Div. of Angelica Corp.,* 117 S.W.3d 15 (Tex.App.-Eastland 2003, no pet.). In *Davis Apparel,* the defendant paid plaintiff monthly commissions of fifteen percent although she maintained their agreement provided for a twenty percent commission. At the end of the contract term, the plaintiff sued for the alleged unpaid commissions. The court held that the parties' agreement was a continuing contract and that claims based on payments made within four years of the first commission payment were not barred by limitations. *Id.* at 18–19. In another case, the parties entered into an agreement whereby the plaintiff was to be paid commissions on a quarterly basis for work performed. *Hart v. Int'l Telephone & Telegraph Corp.,* 546 S.W.2d 660 (Tex. App.-San Antonio 1977, writ ref'd n.r.e.). Her commissions were to be based on the gross profits of her sales. *Id.* at 661. In reversing an instructed verdict, the court of appeals held that the plaintiff could recover any unpaid commissions that became due within the limitations period but those commissions outside the limitations period were barred. *Id.* at 662. The continuing contract exception has also been applied to lease payments and promissory note payments. *See F.D. Stella Prods. Co. v. Scott,* 875 S.W.2d 462, 466 (Tex.App.-Austin 1994, no pet.); *Gabriel v. Alhabbal,*

618 S.W.2d 894, 897 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Like the commissions payable in *Davis Apparel* and *Hart,* Paymentech was to make periodic payments to Spin Doctor. Although the payments were not commissions, they were calculated periodically based on Spin Doctor's credit card sales. Neither the commission payments or the payments payable to Spin Doctor under the agreement were *fixed* payments. They were payments to be calculated and paid on a periodic basis. Because Spin Doctor continued to perform its obligations under the contract after the alleged initial breach of the $7,000.00 reserve, it was able to treat the agreement as continuing in effect so that any failures to make the periodic payments without a reserve as agreed would constitute new breaches. *See Sun Medical, Inc. v. Overton,* 864 S.W.2d 558, 563 (Tex.App.-Fort Worth 1993, pet. denied) (op. on reh'g).

We hold that the parties' agreement constituted a continuing contract and claims based on breaches within four years before April 20, 2005, the date the lawsuit was filed, are not barred by limitations. As such, the initial breach that occurred prior to April 20, 2001 is barred by limitations. However, alleged contract breaches occurring after April 20, 2001 are not barred.

We sustain Spin Doctor's fifth issue, in part, and remand the breach of contract claim to the trial court. In all other respects, we affirm the trial court's judgment.[3]

---

**3.** In light of this Court's disposition of Spin Doctor's fifth issue and the remand of the breach of contract claim to the trial court, we do not address Spin Doctor's third issue complaining of the exclusion of witnesses as untimely designated.