ACCEPTED
03-10-00319-CV
3609282
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/29/2014 7:51:31 PM
JEFFREY D. KYLE
CLERK

# No. 03-10-0319-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/29/2014 7:51:31 PM
JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
SITTING AT AUSTIN

**LOU ANN HUGHES AND PERFORMANCE PRODUCTS, INC.,**

*Appellants, Cross-Appellees*

v.

**JAMES PEARCY**,

*Appellees/Cross-Appellant.*

On appeal from the 433rd Judicial District Court, Comal County, Texas;
Hon. Dib Waldrip, presiding; Trial Court No. 2007-0787 D

**Motion for Rehearing of Appellants
Lou Ann Hughes and Performance Products, Inc.**

Jeff Small
LAW OFFICE OF JEFF SMALL
State Bar No. 00793027
12451 Starcrest Dr., Suite 100
San Antonio, TX 78216.2988
210.496.0611/F: 210.579.1399
jdslaw@satx.rr.com

Counsel for Appellants

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

POINTS PRESENTED ON REHEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

   Point No. 1:      The Court's major-transaction analysis fails to account for the 14% -of- net-sales royalty which PPI was obligated by the Licensing Agreement to pay Pearcy, the dollar amount of which can be determined by reference to the judicial admissions of Plaintiff and his counsel before and during trial.  . . . . . . . . . . vi

   Point No. 2:      When the judicially admitted royalty amount of $714,010 is added to the $500,000 value of the Purchase, Consulting, and Non-Competition Agreements the "aggregate stated value" of the entire agreement exceeds the §15.020 major-transaction threshold and, thus the trial court abused its discretion in failing and refusing to transfer venue to Bexar County pursuant to the agreement of the parties. . . . . . . . . . . . . . . . . . . . . . . . . . . vi

WHY REHEARING SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   The Court's opinion properly stated the scope and standard of review for ascertaining whether the trial court abused its discretion in making its venue determination, but then failed to properly apply it.  . . . . . . 2

      A.    Standard and Scope of Review in a Venue Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The "aggregate stated value" of the Licensing Agreement is 14% of PPI's net sales for five years. . . . . . . . . . . . . . . . . . . 3

C. The dollar value of the 14% royalty can be determined by reference to Plaintiff's and his counsel's judicial admissions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX OF AUTHORITIES

**<u>Cases</u>**

*AIC Mgmt. v. Crews*,
     246 S.W.3d 640 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Broaddus v. Grout*,
     258 S.W.2d 308 (Tex. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hughes v. Pearcy*,
     No. 03-10-0319-CV, 2014 Tex. App. LEXIS 13059
     (Tex. App.-Austin December 8, 2014, no pet. h.) . . . . . . . . . . . . . . . 3, 4

*Isern v. Watson*,
     942 S.W.2d 186 (Tex. App.- Beaumont 1997, pet. denied) . . . . . . . . 7, 9

*Long Trusts v. Griffin*,
     222 S.W.3d 412 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pick v. Bartel*,
     659 S.W.2d 636 (Tex. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ruiz v. Conoco, Inc.*,
     868 S.W.2d 752 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Spin Doctor Golf, Inc. v. Paymentech, L.P.*,
     296 S.W.3d 354 (Tex. App.–Dallas 2009, pet. denied) . . . . . . . . . 3, 4, 10

*Sw. Elec. Power Co. v. PUC of Tex.*,
     419 S.W.3d 414 (Tex. App.– Amarillo 2011, pet. denied) . . . . . . . . . . . 5

*Templeton v. Dreiss*,
     961 S.W.2d 645 (Tex. App.– San Antonio 1998, pet. denied) . . . . . . . . 6

*Thweatt v. Ocean Acc. & Guar. Corp.*,
     62 S.W.2d 250 (Tex. Civ. App.– El Paso 1933, writ ref'd) . . . . . . . . . . . 9

*Wichita County v. Hart,*
        917 S.W.2d 779 (Tex.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wilson v. Fisher,*
        188 S.W.2d 150 (Tex. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wilson v. Tex. Parks & Wildlife Dep't,*
        886 S.W.2d 259 (Tex.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Statutes

TEX. CIV. PRAC. & REM. CODE § 15.020(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

TEX. CIV. PRAC. & REM. CODE § 15.064(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

TEX. GOV'T CODE ANN. § 311.023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## POINTS PRESENTED ON REHEARING

<u>Point No. 1:</u>        The Court's major-transaction analysis fails to account for the 14% -of- net-sales royalty which PPI was obligated by the Licensing Agreement to pay Pearcy, the dollar amount of which can be determined by reference to the judicial admissions of Plaintiff and his counsel before and during trial.

<u>Point No. 2:</u>        When the judicially admitted royalty amount of $714,010 is added to the $500,000 value of the Purchase, Consulting, and Non-Competition Agreements the "aggregate stated value" of the entire agreement exceeds the §15.020 major-transaction threshold and, thus the trial court abused its discretion in failing and refusing to transfer venue to Bexar County pursuant to the agreement of the parties.

**WHY REHEARING SHOULD BE GRANTED**

The stated value of the Licensing Agreement at issue here is "fourteen percent (14%) of net sales . . . [to] a maximum twelve month royalty of $189,000" for a period of five years from the March 31, 2006, date of the Agreement. CR 194, at ¶4. A specific dollar value for that 14% royalty can be determined by reference to other record evidence, including the Plaintiff's and his counsel's admissions as to the value of the Licensing Agreement. 10 RR 18:24-19:2; PX 53.

When the value of the Licensing Agreement, as admitted by Plaintiff and his counsel, is taken together with the "easily determinable" $500,000 value of the Purchase, Non-Compete, and Consulting Agreements the admitted "aggregate stated value" of the PPI sales agreement exceeds the $1 million major-transaction threshold in Civil Practices and Remedies Code section 15.020. Hence, because the parties irrevocably consented to venue in Bexar County (CR 143, at ¶15), venue was mandatory there and the trial court abused its discretion in finding otherwise.

Accordingly, this Court should grant this rehearing, find that the trial court abused its discretion by refusing to transfer venue to Bexar County, and remand this cause with instructions to vacate its judgment and transfer venue of this cause to Bexar County.

1

# ARGUMENT

**The Court's opinion properly stated the scope and standard of review for ascertaining whether the trial court abused its discretion in making its venue determination, but then failed to properly apply it.**

## A. Standard and Scope of Review in a Venue Determination

"In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." TEX. CIV. PRAC. & REM. CODE § 15.064(b). While a plaintiff is given the first choice in the filing of a lawsuit, if a plaintiff's chosen venue is based on a permissive venue statute and the defendant's motion to transfer is based on a mandatory venue provision, the trial court must grant the motion. *Wichita County v. Hart*, 917 S.W.2d 779, 781 (Tex.1996); *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex.1994). A trial court's erroneous denial of a motion to transfer venue requires reversal of the judgment. *See* TEX. CIV. PRAC. & REM. CODE § 15.064(b); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993).

Where parties to a major transaction specify in their written agreement that lawsuits are to be brought in a certain county, that county constitutes a mandatory venue. TEX. CIV. PRAC. & REM. CODE § 15.020(b). A major transaction is "a transaction evidenced by a written agreement under which

2

a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 358 (Tex. App.–Dallas 2009, pet. denied) (quoting TEX. CIV. PRAC. & REM. CODE §15.020(a)).

**B.    The "aggregate stated value" of the Licensing Agreement is 14% of PPI's net sales for five years.**

Reading the various relevant documents as one agreement, this Court observed that taken together it is "easily determinable" that the Purchase, Non-Competition, and Consulting Agreements have an "aggregate stated value of $500,000." *Hughes v. Pearcy*, No. 03-10-0319-CV, 2014 Tex. App. LEXIS 13059, at *6 (Tex. App.-Austin December 8, 2014, no pet. h.). The Court's opinion also noted that the Licensing Agreement obligated PPI to pay Pearcy "royalty payments of fourteen percent of PPI's net sales" for a period of five years. *Id.* at*7. But the Court's opinion ascribes no value to that royalty presumably because of the contingent nature of PPI's future sales. *See id.* But the contingent nature of PPI's future sales is no different than the speculative nature of the $5 million sales figure stated in the agreement at issue in *Spin*

*Doctor* upon which the Court relies. The fact that Spin Doctor did not dispute the $5 million figure at the venue hearing makes the "stated" value of that contract no less speculative since Paymentech was obligated by a contract to pay nothing more than the credit card payments it received for processing.

In both instances the value of the contracts are contingent upon the amounts of money actually received. *Compare Spin Doctor*, 296 S.W.3d at 358 (Paymentech is required only to forward money for Spin Doctor credit card payments actually received), *with Hughes v. Pearcy*, 2014 Tex. App. LEXIS 13059, at *7 (royalty payments are due on net sales for five years up to $945,000 in total royalties), *and* CR 141, at ¶ 4 ("'Net Sales' are defined as collections associated with product sales occurring after April 1, 2006").

The Court's major-transaction analysis is faulty because it ignores the mandate of the statute, which directs that a reviewing court must look at the entire record, including the trial on the merits, to makes its venue determination. TEX. CIV. PRAC. & REM. CODE § 15.064(b). The dollar value of the Licensing Agreement is "easily determinable" by reference to various parts of the "entire record." One need only look to the judicial admissions of Plaintiff and his counsel to determine the dollar value to be ascribed to the

4

14% royalty, which PPI is obligated to pay Pearcy by virtue of the Licensing Agreement. See 10RR 18:24-19:2 (". . . it's $714,010 . . . for Performance Products' breach of the licensing agreement.").

The Legislature's expressed intention mandates that the "appellate court shall consider the entire record" in determining whether venue is proper or not. *See* TEX. CIV. PRAC. & REM. CODE § 15.064 (b); *Sw. Elec. Power Co. v. PUC of Tex.*, 419 S.W.3d 414, 422 (Tex. App.– Amarillo 2011, pet. denied) (in determining legislative intent appellate court must consider "the 'object sought to be attained' by enacting the statute, the 'circumstances under which the statute was enacted,' [and] the 'consequences of a particular construction' . . . TEX. GOV'T CODE ANN. § 311.023 (West 2005)").

The situation here is akin to settled law that necessitates "for a conveyance or contract of sale to meet the requirements of the Statute of Frauds, it must, in so far as the property description is concerned, furnish within itself *or by reference to other identified writings then in existence*, the means or data by which the particular land to be conveyed may be identified with specific certainty." *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983) (emphasis added); *see AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *Broaddus v.*

*Grout*, 258 S.W.2d 308, 309 (Tex. 1953). In conveyances of real property extrinsic evidence may be used "for the purpose of identifying the [property to be conveyed] with reasonable certainty from the data' contained in the contract, 'not for the purpose of supplying the location or description of the [property].'" *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006); (quoting *Pick v. Bartel*, 659 S.W.2d at 637 and *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945)).

In ascertaining the sufficiency of a property description in a real estate conveyance if there is existing language in the instrument which furnishes a key or nucleus description of the property, extrinsic evidence may be used as an aid to identify the property with reasonable certainty, not to supply a missing description. *Templeton v. Dreiss*, 961 S.W.2d 645, 658-59 (Tex. App.-San Antonio 1998, pet. denied). That is the case here. Because the Licensing Agreement "furnishes a key or nucleus description" of the value of the Licensing Agreement by referring to a percentage of net sales, this Court should look to Plaintiff's and his counsel's admissions in assigning a value to that percentage in assessing "aggregate stated value" of the agreement as a whole and in determining whether or not the trial court abused its discretion

6

in making its venue determination.

**C. The dollar value of the 14% royalty can be determined by reference to Plaintiff's and his counsel's judicial admissions.**

At multiple points throughout this proceeding, before and during trial, Plaintiff and his counsel judicially admitted that the value of the 14% royalty to which PPI was obligated by the Licensing Agreement was, at least, $714,010. *See, e.g.*, 10RR 18:20-19:2; 23:10; PX 53; CR141, 201. "Formal declarations in open court by a party's attorney constitute judicial admissions, and include facts asserted by pleading." *See Isern v. Watson*, 942 S.W.2d 186, 200 (Tex. App.- Beaumont 1997, pet. denied)).

In his Summary Judgment affidavit, Mr. Pearcy judicially admitted that, in addition to what he already had been paid, the value of the remaining 14% royalty under the Licensing Agreement was an additional $756,000. CR 201. Pearcy filed his Motion for Summary Judgment March 24, 2008, and, thus, it and the attendant summary judgment evidence in the form of Mr. Pearcy's affidavit was in front of the trial court before it denied the Defendants' Motion to Transfer Venue on July 16, 2008. CR 184, 272.

Likewise, Plaintiff's counsel admitted during his closing argument that

based on Pearcy's expert's report that just the remaining value of the 14% royalty was $533,451. 10RR 18:16-20. In addition, the value of the dishonored royalty checks was $180,559, bringing the total value of the Licensing Agreement as of the time of trial to $714,010. *See* 10RR 18:20-24. Taking the admitted dollar value of the 14% royalty in conjunction with the $500,000 value of the Purchase, Non-Competition, and Consulting Agreements the aggregate stated value of the total agreement is well over the major-transaction threshold of Civil Practice and Remedies Code section 15.020.

Moreover, the aggregate stated value of the entire agreement can also be ascertained by reference to other judicial admissions by the Plaintiff and his counsel. Pearcy testified that when prior sale to fruition (*See* 4RR134:13, 135:7; 5RR48:15, 50:14-24) he agreed to sell PPI to Ms. Hughes for $1.5 million making that the judicially admitted aggregate stated value of the total agreement. 5RR 61:21-25, 62:1-18. Subtracting the acknowledged $500,000 value of the Purchase, Non-Compete, and Consulting Agreements and the $100,000 formula buyout provision from the total sales price judicially admitted by Plaintiff leads to the inevitable result that the value of the Licensing Agreement was $900,000.

Here, as opposed to the situation in *In re Togs Energy* where the only evidence of the value of the agreement came from extrinsic evidence, there is a stated value in the Licensing Agreement— fourteen percent of net sales. CR 141, 201; *see also, e.g.*, 4RR 44:1, 156:14-21, 156:25-157-5. The precise dollar amount to be ascribed to that royalty percentage can be ascertained by reference to Plaintiff's judicial admissions. *See Isern*, 942 S.W.2d at 200.

Where a fact-finder's conclusion is contrary to judicial admissions in the trial of the case, that fact-finding is not binding on the appellate court because a judicially admitted issue should not be submitted to the fact-finder in the first instance. *Isern*, 942 S.W.2d at 200 (citing *Thweatt v. Ocean Acc. & Guar. Corp.*, 62 S.W.2d 250, 253 (Tex. Civ. App.-El Paso 1933, writ ref'd)). The effect of a judicial admission is to waive proof of matters admitted in favor of an opposing party, and the admitting party is bound by the admission and, thus, there is no fact to be found. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001).

Therefore, because the stated value of the PPI sale transaction can be determined by an examination of the entire record, and Plaintiff's admissions therein, the aggregate stated value of the PPI sales transaction has

conclusively been established as exceeding the Civil Practice and Remedies Code major transaction threshold. *See, e.g.*, 10RR 18:20-24. And, because the parties contractually agreed to venue in Bexar County, venue is mandatory there and the trial court abused its discretion in finding otherwise.

As in *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 359 (Tex. App. Dallas 2009), PPI was obligated to pay a royalty to Pearcy as PPI made sales. Like Paymentech, PPI assumed no risk in the Licensing Agreement, it assumed only an obligation to pay Pearcy a stated 14% royalty on actual collections for net sales. CR 141. PPI's anticipated sales figures were not stated in the agreement, but stating a prospective sales amount in the agreement, as was done in *Spin Doctor*, makes that figure no more likely to eventuate than if no sales projection had been included at all. Further, Spin Doctor's failure to challenge the stated sales figure makes the Spin Doctor-Paymentech contract value, which was held to exceed the section 15.020 major transaction threshold, no less speculative.

Even though the Spin Doctor-Paymentech Agreement stated that Spin Doctor's sales were $5 million, Paymentech did not have to pay Spin Doctor that amount unless $5 million was actually what Paymentech received in

credit card payments for Spin Doctor.

**CONCLUSION**

The dollar value of the 14% royalty called for in the Licensing Agreement is "easily determinable" by reference to record evidence and admissions by Plaintiff and his counsel. Plaintiff irrevocably agreed to venue in Bexar County for any suit arising from the agreement of the parties. Accordingly, this Court should find the PPI sale to be a major transaction, hold that the trial court abused its discretion by failing to transfer venue to Bexar County, and remand this cause to the trial court with instructions to transfer venue to Bexar County.

**PRAYER**

Appellants Lou Ann Hughes and Performance Products, Inc. respectfully ask that this Court grant this motion for rehearing, reverse the judgment of the trial court finding that it abused its discretion in failing to transfer venue to Bexar County, and remand this cause to the trial court with instructions to transfer venue to Bexar County.

Respectfully submitted,

|S| *Jeff Small*

Jeff Small
State  Bar No. 00793027
LAW OFFICE OF JEFF SMALL
12451 Starcrest, Suite 100
San Antonio, Texas 78216.2988
210.496.0611/f: 210.579.1399
jdslaw@satx.rr.com
Counsel for Lou Ann Hughes and
Performance Products, Inc.

## CERTIFICATE OF COMPLIANCE

In compliance with Tex R. App. P 9.4(i)(2)(D) and 9.4(i)(3), I certify that the number of words in this document, excluding those matters list in Rule 9.4(i)(1), which was prepared in WordPerfect X6 using 14-point Book Antiqua, is 2265 words.

**CERTIFICATE OF SERVICE**

I, Jeff Small, hereby certify that a true and correct copy of the foregoing Brief of Appellants Performance Products, Inc. and Lou Ann Hughes has been served on counsel of record/interested parties as shown below on December 29, 2014, in accordance with the Texas Rules of Civil Procedure.

Daniel R. Richards
Clark Richards
RICHARDS RODRIGUEZ & SKEITH, L.L.P.
816 Congress, Suite 1200
Austin, Texas 78701
512.476.0005/f: 512.476.1513
drr@hbrfirm.com
crichards@rrsfirm.com

Counsel for James Pearcy

|S| *Jeff Small*

Jeff Small