**Affirmed; Opinion Filed January 23, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00577-CV

### LUIS ZAMORA, Appellant
### V.
### CHAMPION COOLER CORPORATION, Appellee

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2013-2-063CV**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Myers

Luis Zamora appeals the trial court's judgment dismissing his claims against Champion Cooler Corporation. Zamora brings two issues on appeal contending the trial court erred (1) by excluding his expert witness on causation, denying his motion for a continuance of the trial, and denying him leave to designate a new causation expert; and (2) by granting appellee's motion for summary judgment. We affirm the trial court's judgment.

### BACKGROUND

Zamora worked for appellee as an apprentice welder and metal cutter. On August 16, 2012, appellee directed Zamora to help cut a metal plate and fit it over a pit where a press machine once stood. The pit contained grease, oil, moisture, and debris. Zamora used an oxy-acetylene torch over the pit to cut the plate, and the torch vaporized some of the material in the pit. Zamora inhaled the vapors, after which he had difficulty breathing. Zamora went to his

doctor, who determined he had pneumonia. Later, Zamora went to a pulmonologist, Dr. Muqad Zuriqat, who determined Zamora either had asthma, or he had reactive airway dysfunction syndrome (RADS) from the workplace fumes. After being off work for a month, Zamora was about eighty percent improved. However, he continued to have breathing issues while he worked for appellee, and he eventually quit working for appellee because he was too sick to continue working there.

Zamora sued appellee, who was a workers' compensation nonsubscriber, for negligence seeking actual and exemplary damages. Appellee filed no-evidence and traditional motions for summary judgment, which the trial court initially denied. Appellee later moved to exclude the evidence of Zamora's expert witness on causation, Dr. Zuriqat. The trial court granted the motion and ordered that Zamora was barred from presenting Dr. Zuriqat's testimony regarding causation of Zamora's injuries. Appellee then moved for the trial court to reconsider appellee's motions for summary judgment. Zamora moved for a continuance of the trial date and for leave to designate a new expert witness on causation. The trial court denied Zamora's motion and granted appellee's motions for summary judgment, dismissing Zamora's claims.

## EXCLUSION OF EXPERT WITNESS

In his first issue, Zamora contends the trial court erred by (a) granting appellee's motion to exclude Dr. Zuriqat's testimony on causation, and (b) denying Zamora's motion for a continuance of the trial and for leave to designate a new causation expert.

### Standard of Review

We review a trial court's decision to exclude expert-witness testimony for an abuse of discretion. *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 359 (Tex. App.—Dallas 2009, pet. denied). A trial court abuses its discretion when its ruling is arbitrary,

unreasonable, or without reference to any guiding rules or legal principles. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

For an expert's opinion to be admissible under Texas Rule of Evidence 702, the expert must be qualified, and the expert's opinion must be relevant to the issues in the case and based upon a reliable foundation. TEX. R. EVID. 702; *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex. 1998); *E.I. du Pont & de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The relevance requirement, which incorporates traditional relevancy analysis under Texas Rules of Evidence 401 and 402, is met if the expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Robinson*, 923 S.W.2d at 556 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as rules 401 and 402. *Id.*

Rule 702's reliability requirement focuses on principles, research, and methodology underlying an expert's conclusions. *Id.* at 557. Under this requirement, expert testimony is unreliable if it is not grounded "in the methods and procedures of science" and is no more than "subjective belief or unsupported speculation." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Gammill*, 972 S.W.2d at 727. In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; instead, the trial court determines whether the analysis used to reach those conclusions is reliable. *Id.* at 728.

When an expert is challenged, the proponent of the expert opinion must prove the reliability of each opinion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). The

proponent bears this burden "regardless of the quality or quantity of the opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong." *Whirlpool v. Camacho*, 298 S.W.3d 631, 639 (Tex. 2009). This burden includes ensuring that the expert's testimony contains no internal inconsistencies. *See Gen. Motors Corp. v. Iracheta*, 161 S.W.2d 462, 470–72 (Tex. 2005).

The trial court serves as a gatekeeper to screen out irrelevant and unreliable expert evidence. *Zwahr*, 88 S.W.3d at 629. The trial court has broad discretion to determine the admissibility of evidence, and we review the trial court's decision under an abuse of discretion standard. *Id.* A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Whether a trial court abused its discretion in making an evidentiary ruling is a question of law. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001).

In chemical-exposure cases, the plaintiff must present evidence of both general and specific causation. *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). General causation asks whether a substance is capable of causing a particular injury in the general population; specific causation asks whether that substance caused a particular individual's injury. *Id.* Proving one type of causation does not necessarily prove the other, and logic dictates that both are needed for a chemical-exposure plaintiff to prevail. *Id.* at 36–37. Generally, expert testimony is necessary to establish causation regarding medical conditions outside the common knowledge and experience of jurors. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015). Expert testimony is particularly necessary in chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony. *Brookshire Bros.*, 176 S.W.3d at 36.

## Dr. Zuriqat's Testimony

Dr. Zuriqat testified[1] he is board certified in pulmonology and critical-care medicine. He examined Zamora on September 10, 2012, about three weeks after Zamora's exposure to the fumes. Zamora told him he had shortness of breath and coughing that started after he was exposed to a large amount of smoke. Zamora told Dr. Zuriqat he had not had that problem before. Dr. Zuriqat did a lung-function test on Zamora and reviewed his chest X-rays, all of which were normal. He determined that Zamora had symptoms of asthma that were also consistent with reactive airway dysfunction syndrome (RADS), which he stated "is a disorder that sometimes—or can be or is induced by heavy exposure to anything in the environment— some certain things in the environment that can cause—if it is inhaled in large amounts, can cause some dysfunction in the bronchial tubes that mimics asthma." Dr. Zuriqat put in his notes under a question mark "possible asthma" and "possible reactive airway dysfunction syndrome." He stated he had seen other patients with RADS after inhalation of fumes.

Two days later, Dr. Zuriqat signed a form stating Zamora would be able to return to work on September 26. Dr. Zuriqat stated on the form, "due to smoke/chemical exposure the pt did experience persistent cough with vomiting." He testified he concluded Zamora's symptoms were "suspected or likely" due to smoke and chemical exposure based on Zamora's statements and that he had no reason to believe Zamora was dishonest with him. He testified there is no way to be sure from testing that Zamora's symptoms were due to the smoke and chemicals. He testified that when he signed the form, he believed the probability was more than fifty percent that Zamora's cough and vomiting were due to the inhalation of fumes based on reasonable

---

[1] Dr. Zuriqat's testimony comes from his deposition. The only portions of the deposition in the appellate record are the excerpts attached to Zamora's summary judgment response and to his response to appellee's motion to exclude Dr. Zuriqat's testimony. Appellee's motion to exclude Dr. Zuriqat's testimony cited to the deposition but did not attach it. Some of appellee's citations are to portions of the deposition that are not included in the appellate record. On appeal, neither party cites to those missing portions of the deposition. Accordingly, we base our determination on the portions of Dr. Zuriqat's testimony included in the appellate record and do not consider the effect, if any, of the portions of Dr. Zuriqat's testimony that may have been reviewed by the trial court but that are not included in the appellate record.

medical probability. Dr. Zuriqat examined Zamora again on September 25, and Zamora said he was about eighty percent improved.

Dr. Zuriqat testified that RADS is "an irritant-induced type of asthma" and that the irritant can be a gas, such as acetylene, or "fumes from grease and oil heated by a torch when somebody is cutting something nearby." He also testified that he could not determine whether anything Zamora inhaled at appellee's facility caused his lung condition. He agreed his impression as to the cause of Zamora's condition was "speculation . . . a possibility." He also stated he did not know the amount of any substance or length of time Zamora breathed in to cause his lung condition. He also stated that if exposure to a substance leads to coughing and the symptoms persist after the person is no longer exposed to the substance, "that indicates that you might have been exposed to a significant amount."

Zamora's attorney asked Dr. Zuriqat if Zamora had RADS:

Q. . . . So if we take your record from the first visit and until the last one, based on his improvement, are you of the opinion that when he first presented to your office on September 10th, 2012, he had respiratory airway dysfunction syndrome and that that condition had improved by the time you last saw him?

A. I would say he could have, and it improved. He could. This is not a—you know, as a—this, yes, can suggest that, and can suggest, you know, asthma still, you know. And these are all subjective because the initial symptoms are subjective and improvement was subjective, too.

(Appellee's objections omitted.)

Dr. Zuriqat also testified he reached a "differential diagnosis" about Zamora on September 10. "Differential diagnosis is a 'patient-specific process of elimination that medical practitioners use to identify the "most likely" cause of a set of signs and symptoms from a list of possible causes.'" *Neal v. Dow Agrosciences LLC*, 74 S.W.3d 468, 473 n.3 (Tex. App.—Dallas 2002, no pet.) (quoting *Minn. Mining & Mfg. Co. v. Atterbury,* 978 S.W.2d 183, 194 n. 9 (Tex. App.—Texarkana 1998, pet. denied) (citing *Pick v. Am. Med. Sys., Inc.,* 958 F. Supp. 1151,

1162–63 (E.D. La. 1997))). The differential diagnosis was what Dr. Zuriqat recorded in his impressions on September 10, namely, that Zamora was suffering from either RADS or asthma.

## Hearing on the Motion to Exclude

At the hearing on appellee's motion to exclude Dr. Zuriqat's testimony, the trial court was concerned that Dr. Zuriqat's testimony was that Zamora had either "asthma, which many people have, or RADS, which would be an exact diagnosis that plaintiff wants presented to the jury." Zamora's attorney said Dr. Zuriqat "is not being presented to say [Zamora] has RADS." Instead, Zamora's attorney stated the strategy was to present Dr. Zuriqat's testimony that Zamora either had asthma or he had RADS from exposure to the fumes in the workplace, and then present evidence of Zamora's lack of a prior history of asthma. However, the trial court was concerned that Dr. Zuriqat's testimony of an ambiguous diagnosis of asthma or RADS would not aid the jury in making a determination that Zamora's condition was RADS from inhalation of fumes in the workplace and not asthma.

## Zamora's Argument on Appeal

On appeal, Zamora quotes extensively from Dr. Zuriqat's deposition and states, "From the foregoing testimony the trial court should have reasonably inferred that Appellant's injury proximately caused by Appellee's conduct was at least asthma-like symptoms, if not chemical exposure." We disagree. Dr. Zuriqat's "impressions" were asthma or RADS. Dr. Zuriqat tied the possibility of RADS to the workplace fumes, but he did not testify that if Zamora had asthma then it resulted from the fumes. Instead, he observed that Zamora had no prior history of asthma based on Zamora's statements to him. However, even knowing Zamora's prior lack of asthma, Dr. Zuriqat did not testify that Zamora's problems were caused by RADS and not asthma. Instead, his "impressions" were asthma or RADS.

Zamora also points to Dr. Zuriqat's testimony about the Medical Leave Act form. Dr. Zuriqat wrote on the form that Zamora experienced persistent cough with vomiting "due to smoke/chemical exposure." Dr. Zuriqat testified that when he signed the form, he "believe[d]" "at that time" "that the probability of this being the case was more than 50 percent." However, at his deposition more than two years later, Dr. Zuriqat did not testify Zamora's problems were "due to [RADS from] smoke/chemical exposure." Instead he testified the problems were either from RADS or asthma.

In this case, the trial court could reasonably have concluded that Dr. Zuriqat's inability to tie Zamora's injuries to his workplace-exposure to fumes and not to asthma made his testimony unhelpful to the jury on the subject of causation. Zamora points to Dr. Zuriqat's testimony that it is impossible to determine whether Zamora's breathing difficulties resulted from RADS or from asthma because the symptoms are the same. Although this testimony explains why Dr. Zuriqat could not identify RADS and rule out asthma as the cause of Zamora's injuries, the trial court could have concluded it did not make Dr. Zuriqat's testimony on causation more helpful to a jury. We conclude the trial court did not abuse its discretion by excluding Dr. Zuriqat's testimony on the causation of Zamora's injuries.[2]

Zamora also contends in his statement of the first issue that the trial court erred by denying his motion for continuance and for leave to designate a new expert witness on causation. However, Zamora's argument on appeal does not address this contention beyond the bare conclusion that the trial court erred by denying the motion. Accordingly, we conclude Zamora has not shown the trial court abused its discretion by denying the motion.

We overrule Zamora's first issue.

---

[2] Whether the trial court would have abused its discretion by denying appellee's motion to exclude Dr. Zuriqat's testimony on causation is not before us, and we express no opinion on that subject.

**SUMMARY JUDGMENT**

In his second issue, Zamora contends the trial court erred by granting appellee's traditional and no-evidence motions for summary judgment. We conclude the trial court properly granted appellee's no-evidence motion for summary judgment. Accordingly, we do not address whether the trial court erred by granting the traditional motion for summary judgment.

The same legal sufficiency standard of review that is applied when reviewing a directed verdict is also applied when reviewing a no-evidence summary judgment. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc*., 300 S.W.3d 348, 375 (Tex. App.—Dallas 2009, pet. denied) (op. on motion for reh'g); *RTLC AG Prods., Inc. v. Treatment Equip. Co*., 195 S.W.3d 824, 829 (Tex. App.—Dallas 2006, no pet.). When reviewing a no-evidence summary judgment, we must determine whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *Tex. Integrated*, 300 S.W.3d at 375; *RTLC*, 195 S.W.3d at 833. We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam); *Wal–Mart, Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We view all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregard all contrary evidence and inferences. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See Smith*, 288 S.W.3d at 424. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Merrell Dow*, 953 S.W.2d

at 711. When, as in this case, the trial court's order granting summary judgment does not specify the grounds relied on, we will affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000); *Cunningham v. Tarski*, 365 S.W.3d 179, 186 (Tex. App.—Dallas 2012, pet. denied).

One of the grounds of appellee's no-evidence motion for summary judgment was that Zamora had no evidence that his injuries were caused by exposure to toxic fumes in the workplace. Lay testimony can be sufficient to raise a fact question on proximate cause if general experience and common sense would allow a lay person to fairly determine causation. *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 241 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In chemical-exposure cases, lay testimony is not sufficient because "medically complex diseases and causal ambiguities compound the need for expert testimony." *Brookshire Bros.*, 176 S.W.3d at 36; *see Hair v. Church & Dwight Co.*, No. 05-03-01153-CV, 2004 WL 1615833, at *2 (Tex. App.—Dallas July 20, 2004, no pet.) (mem. op.) (quoting *Brookshire Bros.*).

After the trial court signed the order excluding Dr. Zuriqat's testimony on causation, Zamora had no expert evidence on the causation of his injuries. As *Brookshire Brothers* and this Court's opinion in *Hair* point out, expert testimony is necessary in this type of case to establish causation. Because Zamora had no expert evidence of the causation of his injuries, the trial court did not err by granting appellee's no-evidence motion for summary judgment.

In his reply brief, Zamora argues the summary judgment record shows the trial court erred by granting the motion for summary judgment even without expert testimony on causation. Zamora's argument relies on the Fifth Circuit's opinion in *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) (per curiam). In that case, Austin, an employee at a Kroger grocery store, was directed to clean an oily spill in the store's restrooms. The store was out of "Spill Magic," a

substance put on spills to help clean them safely. While trying to clean the oily spill without Spill Magic, Austin slipped and fell, breaking his leg. *Id.* at 327–28. Austin sued Kroger alleging it failed to provide him with a necessary instrumentality to perform his job safely, namely, Spill Magic. *Id.* at 328. The district court granted Kroger's motion for summary judgment. On appeal, the Fifth Circuit determined there was some evidence that Spill Magic was a necessary instrumentality for Austin's job and some evidence that Kroger had the duty to supply Spill Magic. However, the Fifth Circuit did not reach the issue of causation because it determined the district court erred by denying under the wrong rule Austin's motion for reconsideration of the court's denial of his motion to file a surreply containing his doctor's expert report on causation. *Id.* at 328, 336–37. The opinion does not hold that causation under those facts could be established without expert testimony. However, even if it did so hold, a slip and fall on an oily floor resulting in a broken leg is much closer to a situation where a lay person's general experience and common sense would allow a causation determination than is the situation in a chemical-exposure case. *See Brookshire Bros.*, 176 S.W.3d at 36. We conclude *Austin* is not applicable to the case before us.

Zamora also cites *Herrmann v. Goff Custom Homes, L.P.*, No. 05-12-00318-CV, 2013 WL 4517274 (Tex. App.—Dallas Aug. 23, 2013, no pet.), concerning whether "Appellee breached its duties to [Zamora] and thereby proximately caused or at least contributed to his resulting injuries and damages." However, *Herrmann* addressed only whether the defendant owed the plaintiff a duty to warn of a dangerous condition. *Id.* The opinion did not address the issue of causation, and the facts in that case, a person falling down an elevator shaft when a guardrail gave way, do not involve the medically complex questions present in a chemical-exposure case. We conclude *Herrmann* is not applicable.

We overrule Zamora's second issue.

**CONCLUSION**

We affirm the trial court's judgment.

/Lana Myers/

LANA MYERS

160577F.P05        JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LUIS ZAMORA, Appellant

No. 05-16-00577-CV      V.

CHAMPION COOLER CORPORATION,
Appellee

On Appeal from the County Court at Law
No. 2, Grayson County, Texas
Trial Court Cause No. 2013-2-063CV.
Opinion delivered by Justice Myers. Justices
Bridges and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee CHAMPION COOLER CORPORATION recover its costs
of this appeal from appellant LUIS ZAMORA.

Judgment entered this 23rd day of January, 2018.